594 A.2d 761

**Carole BRIGGS, Administratrix of the Estate of Patricia C. Briggs, Late, of Port Allegany McKean County, Pennsylvania, Appellant,**

**v.**

**ERIE INSURANCE GROUP, a/k/a Erie Insurance Exchange, a/k/a Erie Insurance Company, Appellee.**

**Audrey J. PAINTER, Administratrix of the Estate of Tina M. Barr, Late, of Port Allegany, McKean County, Pennsylvania, Appellant,**

**v.**

**ERIE INSURANCE GROUP, a/k/a Erie Insurance Exchange, a/k/a Erie Insurance Company, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 27, 1991.

Decided July 19, 1991.

562

Harold B. Fink, Jr., Port Allegany, for appellant.

T. Warren Jones, Erie, for appellee.

Before DEL SOLE, FORD ELLIOTT and BROSKY, JJ.

DEL SOLE, Judge:

This is an appeal from an order granting Summary Judgment in favor of Appellee, Erie. Appellants, Briggs and Painter, representatives of the estates of their deceased

daughters, seek review of the trial court's action on their claim against Erie for fraudulent inducement. Upon review of this claim and the arguments presented, we conclude that Summary Judgment was improperly entered in this case. Contrary to the trial court's finding, the Appellants' claims against Erie do not seek rescission of a settlement agreement, but rather are claims for damages based upon Erie's fraudulent acts which occurred during settlement proceedings. Because rescission of the settlement agreement is not sought, the trial court erred in ruling that Appellants' actions were precluded by this court's previous decisions in a matter involving these Appellants, and therefore, Appellants may proceed in litigating their claims.

In issuing its ruling the trial court relied on the factual events which preceded the filing of the instant complaint. Ms. Briggs and Ms. Painter each had a daughter who died as a result of an automobile collision with a vehicle operated by Michael Smith. Erie, Smith's insurer, initiated settlement discussion with Briggs and Painter in their capacities as representatives of their daughters' estates. As a result of these "discussions" Briggs executed a general release for a settlement of $125,000, and Painter did likewise for the amount of $130,000. Both releases recite that they operate as a release of all claims against Michael Smith "and any and all other persons, firms, corporations, [and] associations, ... arising out of the accident on or about January 11, 1987." Briggs and Painter later brought an action against Michael Smith and Michael Taylor, another individual alleged to be responsible for the accident. Smith and Taylor pled the defense of the release. The trial court granted the defendant's preliminary objections, ruling that plaintiffs, having failed to tender the settlement proceeds, could not attack the releases and seek their rescission. On appeal to the Superior Court the trial court's decision was affirmed "on the basis of [the trial court's] opinion."

In the instant action brought against Erie, the trial court, when presented with a motion for Summary Judgment, ruled that Appellants "failed to meet the prerequisite for

rescission, i.e., the tender of the contract or settlement proceeds, pursuant to the Superior Court Order." The trial court concluded that "the holding of the Superior Court that the releases were binding and enforceable is now a final judgment and precludes the present claims against defendant Erie insurance."

The trial court's ruling in the instant matter is premised on the belief that Appellants seek to rescind the release. Such is not the case. Appellants' Complaints seek damages for the fraud allegedly perpetrated by Erie's employee. The Complaints aver that an adjuster for Erie "intentionally, fraudulently, and maliciously informed the [Appellants] of certain facts which were not true and which were designed ... for the express purpose of inducing the [Appellants] to settle." Appellant–Briggs alleges that she was told that the maximum amount of liability insurance coverage was in the amount of $125,000 when, in fact, the limits of the liability policy were $250,000/$500,000. A similar allegation is found in Appellant–Painter's Complaint which states that she was told the policy limits were $150,-000. It is also alleged that the adjuster informed Appellant–Briggs that if she were to obtain her own attorney it would cost her substantial sums of money causing her to receive less than the amount being offered to settle the case. The Complaints further provide that Appellants are precluded from asserting causes of action against Michael Smith and Michael Taylor because of the fraudulently induced releases. Appellants do not in their Complaint seek rescission of the releases, but rather seek damages for the losses they have allegedly suffered due to this fraudulent action. Because Appellants are not seeking to avoid their releases, a return of the settlement proceeds is not a prerequisite to this action. *Hess v. Evans*, 288 Pa.Super. 180, 431 A.2d 347 (1981).

For these same reasons, the trial court erred in concluding that the instant action was controlled by this court's previous decision in Appellants' case against Smith and Taylor. Neither the parties, nor the issues in these two

matters are the same. In fact, this court affirmed the trial court's actions in the previous case brought against the individual tortfeasors based upon a trial court opinion which contained the following language:

> Although the plaintiff claims to be the victim of fraud, that is a separate cause of action that should be directed toward those alleged to have perpetrated it. Such an allegation cannot be used to justify relitigating a cause of action against these individual defendants who are protected by the release and who played no part in the alleged fraud.

As suggested by the trial court in the previous case, Appellants now have brought a separate action in fraud against the alleged perpetrator, Erie.

The Supreme Court recently considered a case with a similar collateral estoppel claim. In *Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346 (1991) the Muhammads filed a legal malpractice suit against the attorney and the firm who had represented them in a medical malpractice case in which a settlement was reached. The appellants alleged that the suit against them should have been dismissed because it sought to relitigate the settlement, which the Superior Court in a previous case upheld. *See Muhammad v. Childrens' Hospital of Pittsburgh*, 337 Pa.Super. 635, 487 A.2d 443 (1984) (unpublished memorandum opinion.) The Supreme Court found that the second action was not barred by the doctrine of collateral estoppel. The court stated:

> The issue in the first case was whether Mrs. Muhammad had authorized the settlement. The issues in the case before us are whether the attorney appellants were negligent and/or deceitful in their representation of the Muhammads and, if so, whether the Muhammads suffered harm as a result. It is thus evident that the matter is not barred by the doctrine of collateral estoppel as there are issues in this case that were not litigated in the medical malpractice case.

526 Pa. at 546, 587 A.2d at 1348.)

Similarly in this case, the issue Appellants seek to have addressed is the fraudulent conduct by Smith's insurer, Erie. The previous action filed by Appellants was not brought against Erie but was against two individual tortfeasors. The trial court in its opinion in the previous case noted that the fraudulent conduct of the insurer was not an issue, and it dismissed Appellants' claims against the individual tortfeasors on the basis that Appellants had failed to return the settlements proceeds which precluded them from pursuing a rescission of the settlement agreement and release. As in *Muhammad v. Strassburger*, the doctrine of collateral estoppel does not bar the instant matter since there are issues in this case which were not litigated in Appellants' case against the individual tortfeasors.

Although we conclude that Appellants' claims against Erie are not barred by collateral estoppel, and that Appellants were not required to submit the settlements proceeds to the court before litigating this claim, we find it necessary to examine the claims made by Appellants to determine if they are viable.

■ When reviewing an entry of summary judgment, the appellate court's scope of review is plenary. *Curry v. Estate of Thompson*, 332 Pa.Super. 364, 481 A.2d 658, 659 (1984). In applying the same standard as the trial court we must accept as true all well pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Id.* To uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108, 109 (1983).

■ The claims made by Appellants in the instant case are based upon allegations of fraudulent inducement. Erie submits that these claims arise out of the accident and are, therefore, barred by the release. Erie continues by arguing that Appellants, in their previous action seeking to rescind

the settlement, elected a remedy and they cannot now seek damages based upon the same contract.

Appellants in the instant case are not bringing this action based upon the settlement contract, as Erie contends. Their action is also not based upon claims arising out of the automobile accident, which would be barred by the release. Appellant claims relate solely to specific conduct which they allege Erie's agents engaged in during certain settlement discussions. It is this conduct, which Appellants allege was intentional, fraudulent and malicious, which forms a basis for their cause of action.

In *Muhammad* we were again reminded of the longstanding public policy which encourages settlements. In recognizing such a policy the court concluded that plaintiffs will not be permitted to file suits against their attorneys unless it can be shown that they were "fraudulently induced to settle the original action." The Supreme Court rejected the concept that an action could be brought against an attorney for malpractice based on negligence and/or contract principles when the client has agreed to the settlement, but concluded "only cases of fraud should be actionable." *Muhammad v. Strassburger, supra,* (526 Pa. at 546, 587 A.2d at 1348) (Justices Larsen and Zappala dissenting.)

As the *Muhammad* case demonstrates, a claim based upon the fraudulent conduct of one's counsel is a separate matter from issues involving the sanctity of settlement agreements. Likewise the fraudulent conduct of a third party, which occurs during settlement proceedings between an injured party and a tortfeasor, is actionable where the necessary elements are alleged. "One may not, with impunity, induce another to contract by fraudulent misrepresentations." *College Watercolor Group, Inc. v. Wm. H. Newbauer, Inc.,* 468 Pa. 103, 360 A.2d 200, 206 (1976).

Traditionally, in order to state a cause of action for fraud, the plaintiff was required to establish: (1) a misrepresentation, (2) a fraudulent utterance thereof; (3) an intention by

the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damaged to the recipient as the proximate result. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 108, 464 A.2d 1243 (1983). We have recently clarified the second element of the test to refer to the intent or scienter required for an utterance to be considered fraudulent, which intent has been characterized as knowing or reckless. *B.O. v. C.O.*, 404 Pa.Super. 127, 132, fn. 1, 590 A.2d 313, 315 fn. 1 (1991). The allegations contained in Appellants' complaint satisfy each of these elements.

 As stated, Appellants contend that Erie's employee made a misrepresentation of the policy limits announcing that they were a particular figure when in fact they were in a higher amount. Appellants also alleged this misrepresentation was intentionally and maliciously made and that it justifiably induced them to act to sign their releases, which precluded them from seeking further benefits. We find these actions, which for purposes for summary judgment we accept as true, constitute fraudulent conduct. While a carrier may in good faith negotiate a settlement and is not required to state its insured's policy limits, when it chooses to disclose this information it must do so honestly.

 Where, as here, it is alleged that an insurance company misrepresents a material fact to induce settlement, such as the limits of the applicable policy, and this misrepresentation causes a settlement to occur, the plaintiff who can prove this fraudulent conduct is entitled to damages. Because Appellants make such an allegation in the instant case; and because their action is not barred by the release or any previous litigation concerning different parties and separate matters, we vacate the award of Summary Judgment and remand this matter for further proceedings.

Judgment vacated. Case remanded for further proceedings. Jurisdiction relinquished.

BROSKY, Judge, concurring.

I concur with the result reached by the majority, but write here for purposes of clarification of a few matters.

I believe the key to the present case lies in a premise made in appellee's brief. Appellee acknowledges in its brief that one who is fraudulently induced into a contract has two distinct remedies. Appellee's brief, p. 20. One, pursuing the voidable nature of the fraudulently induced contract he can seek recission of the contract and be placed in a status quo ante; or, two, he can affirm the contract as formed and sue for damages resulting from the fraud. *National Building Leasing Inc. v. Byler*, 252 Pa.Super. 370, 381 A.2d 963 (1977). In an indirect fashion the issue of fraudulent inducement was introduced into the first filed action against the defendant-tortfeasors. However, it was found that, even in the presence of fraud, avoidance of the consequences of the release and a restoration to the status quo ante required tender of the settlement proceeds. Both appellants appeared unable to meet this requirement. In the present action appellants are, perhaps by necessity, seeking the latter remedy. Since there is no desire to rescind the contract it is unnecessary to return the proceeds of the previously executed settlement. Thus, we can dispel appellee's first argument.

Appellee has also suggested that the present action is barred by the doctrine of res judicata. However, this is not the case. Appellant's first action was a claim for liability based upon negligent operation of a motor vehicle. The present action is a claim for fraud based upon settlement negotiations which ensued after the automobile accident. Not only are the parties different, the nature of the claims and the facts supporting them, although interrelated, are distinctly different as well. Therefore, res judicata does not bar the present action.

Perhaps appellee really wished to make a collateral estoppel argument. Appellee asserts that appellants are raising the same "claim" as earlier, that the release was procured through fraud. However, it is notable that appellants at no

time initiated an action for recission of the contract. Rather, *appellee* interjected this issue by asserting the release as an affirmative defense to the liability action. Appellants countered with an assertion that the release was invalid due to fraud. The thrust of their position at that time was that the release did not prevent an action for damages resulting from the auto accident because the release was fraudulently procured. The court found, without addressing the fraud issue, that even if fraudulently procured, absent a tender of the consideration the release would bar the liability action. Thus, although the issue was presented to the court the claim was for damages as a result of the auto accident, not an action for recission of the contract.

Although, appellee argues that the procedural framework is a distinction without a difference, I cannot agree. Res judicata is a doctrine of *claim preclusion*. Appellants' claim in the first action was for damages resulting from an auto accident. The claim in the second action was for damages resulting from fraud in settlement negotiations. These are distinctly different actions supported by different facts. If both actions relied upon the same facts, appellee would be correct. Appellants would have been obligated to pursue both "claims" in the original proceeding. However, that is not the case. That the issue of fraud was brought up in the first action could, at best, set up a possibility of collateral estoppel or issue preclusion. However, I see no issue decided in the previous action which would prevent the present action from proceeding. The fact of the matter is, a key issue was decided in the previous litigation, that being that notwithstanding any fraud in the inducement, absent a return of the settlement proceeds the release will bar a liability action against the original defendants. However, this fact is insufficient to prevent the hearing of the fraud claim presently before the court because such an action does not turn upon recission of the settlement contract or an avoidance of that release. The present action, in essence, assumes an affirmance of the contract and a suit for damages related to the fraud. The damages sought are

for the perpetration of the fraud,[1] and although related to the deaths occurring in the auto accident, the damages are not *for* those deaths. The factual issue paramount to the present action, whether or not there was a fraudulent inducement, has not yet been decided.

The above discussion should dispel appellee's last argument, that appellants are precluded from suing for fraud because they had already elected their remedy, that being recission, in the first action. The fact of the matter is, the remedy sought by appellants in the first action was *money damages* for the *death of their decedents*. The validity of the release was an issue collateral to the first action which was interjected by appellee. Appellants did not choose a remedy of recission, but argued fraud to counter the defense asserted by the defendants. The present action seeks money damages for fraud. Thus, the only remedy which has been sought regarding the *fraudulent inducement* is the present action for money damages. Had appellants filed an action seeking recission while failing to also plead, alternatively, an action for damages, appellee's position might prevail. However, that is not what transpired and that is why appellee's argument must fail now.

---

1. I cannot say I am in total agreement with appellants' characterization of the measure of those damages. Appellants attempt to argue that the measure of those damages "is what plaintiffs would have recovered through a wrongful death and survival action, not limited to the limits of the respective liability policies, but could include any monies recoverable from both defendants individually as well as any underinsured coverage that would have been available had that coverage been 'brought into play' by the amount of the wrongful death and survival verdict." Appellants' brief at p. 10. The proper measure of damages, it seems to me, would be the sum that appellants would have recovered in the absence of the fraud minus the sum actually recovered. Although the exact amount this might be must be decided by the fact finder, it appears dubious to assert that one who appeared willing to settle for the incorrectly perceived lower policy limits would have been unwilling to settle for the correct and higher sum of the actual policy limits.