Chester DEMPSEY and Helen
Jane Dempsey

v.

**ASSOCIATED AVIATION UNDERWRITERS, Lonnie Williams and Cessna Aircraft Company.**

Civ. A. No. 91–5162.

United States District Court,
E.D. Pennsylvania.

Feb. 7, 1992.

---

Arthur Alan Wolk, Wolf, Genter & Harrington, Philadelphia, Pa., for plaintiffs.

Madeline M. Sherry, Hecker, Brown, Sherry and Johnson, Philadelphia, Pa., Jonathan M. Stern, Mark A. Dombroff, Katten, Muchin, Zavis, & Dombroff, Washington, D.C., for defendants.

Ralph G. Wellington, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Cessna Aircraft Company.

## MEMORANDUM

DALZELL, District Judge.

Plaintiffs Chester and Helen Jane Dempsey filed this diversity action after settling a state court action in Montgomery County, Pennsylvania. In the state court litigation,[1] the Dempseys sued various parties including Cessna Aircraft Company, which manufactured an airplane in which Chester Dempsey was severely injured. The Demp-

---

1. *Dempsey v. Cessna, et al.*, Civil Action No. 90–01503, Court of Common Pleas of Montgomery County, Pennsylvania (the "state court action") remains pending because plaintiffs settled only with Cessna, and not with defendants Pioneer Aviation, Inc., Robert M. Keller, and B & J Sheet Metal, Inc. There was a prior, federal court action, *Dempsey v. The Cessna Aircraft*

*Co.*, Civil Action No. 89–4373 (the "federal court action"), that was voluntarily dismissed in favor of the state court action. Cessna remains a party in the state court action as a cross-claim defendant of Pioneer, Keller and B & J, and continues to serve and respond to discovery in that case.

seys and Cessna ultimately agreed to a $300,000.00 settlement on a joint tortfeasor basis, and the Dempseys executed a release in Cessna's favor.

Plaintiffs now bring this action, alleging that during discovery prior to settlement Cessna withheld a crucial document it should have produced pursuant to a document request in the federal court action. Plaintiffs claim that if this document—a draft Cessna service bulletin regarding the problem of undrainable water in fuel tanks of Cessna aircraft—had been produced, they never would have agreed to the settlement. Cessna's counsel disclosed the existence of the document after Cessna had settled the state court case.

Plaintiffs have *not* tendered the $300,000.00 back to Cessna in order to challenge the settlement. Rather, plaintiffs now bring this new federal suit, charging that Cessna and its insurer, Associated Aviation Underwriters ("AAU"), committed fraud in negotiating the settlement. Plaintiffs have also named Lonnie Williams, the Claims Manager of AAU's Overland Park, Kansas, office, as a defendant. The Dempseys seek "a minimum" of $1.7 million in compensatory damages and punitive damages "in excess of" $25 million.

▇ This case raises, among other issues, the question of whether a defendant's allegedly improper failure to produce documents in pretrial discovery permits a settling plaintiff, upon learning of the nondisclosure after the settlement, to keep the money paid in settlement yet sue for additional damages arising from the alleged non-disclosure. Cessna has moved to dismiss the Dempseys' complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants AAU and Williams have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and Williams also moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

We have considered some materials in addition to the pleadings, and have heard extensive oral argument and received supplementary submissions. To the extent that matters outside the complaint have been taken into account these motions will be treated as motions for summary judgment pursuant to Fed.R.Civ.P. 56. As will be seen, however, we largely take the Dempseys' allegations as true, even as amplified in the eloquent argument of their counsel,[2] as we test their legal sufficiency. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

Without in any way condoning evasions of duties under the liberal federal discovery rules, we predict that the Pennsylvania Supreme Court would hold that the powerful public interest settlements serve, which is reinforced by maintaining their finality, requires that the settlement and associated release should remain intact as the complete resolution of the parties' dispute. This is an especially confident prediction where, as here, plaintiffs retain the consideration for their release and such settlement is entered into by plaintiffs counselled by sophisticated counsel of their choice.

### Cessna's Motion to Dismiss, or for Summary Judgment

Although Cessna is a Kansas corporation with its principal place of business in Wichita, Kansas, there is no dispute between the Dempseys and Cessna that Pennsylvania law governs the dispute between them.

Referring to the leading Pennsylvania Supreme Court authority, Cessna correctly cites Pennsylvania law's high value of promoting and maintaining the finality of civil settlements. The Pennsylvania Supreme Court, in *Nocito v. Lanuitti,* 402 Pa. 288, 167 A.2d 262 (1961), held that a party who executes a release allegedly procured by fraud, may, upon discovering the fraud, either disaffirm the release and offer to return the consideration, or affirm the voidable contract and waive the fraud. *Id.,* 402

---

2. Plaintiffs' view of the materiality of the nondisclosure is described in great detail in their counsel's presentation at the oral argument.

*See* Transcript of the December 27, 1991, oral argument at 24–30.

Pa. at 289, 167 A.2d at 263. More recently, the Pennsylvania Superior Court, in *Hess v. Evans*, 288 Pa.Super. 180, 431 A.2d 347 (1981), held that plaintiffs could not "proceed by alleging that the release was obtained as the result of fraud and misrepresentation and at the same time retain the consideration that was paid to them," *id.*, 288 Pa.Super. at 182, 431 A.2d at 348, citing and discussing *Nocito* at 431 A.2d 349.

Under *Erie Railroad Co. v. Tompkins*, this Court is of course bound to apply Pennsylvania law as the Pennsylvania Supreme Court has delineated it. Doubtless in recognition of this fundament of our federalism, plaintiffs cite a recent Pennsylvania Superior Court case, *Briggs v. Erie Ins. Group*, 406 Pa.Super. 560, 594 A.2d 761 (Pa.Super.1991), which they aver undermines the authority of *Nocito*. Absent suggestions from the Justices of the Pennsylvania Supreme Court, however, a federal court sitting in its diversity jurisdiction cannot lightly assume that the views of an intermediate appellate court, however recent, are a more reliable indicator of how the Supreme Court of Pennsylvania would decide the present controversy than existing Supreme Court authority, whatever its vintage. *See, e.g.*, the enterprise the Court of Appeals' embarked upon in its recent canvass of the Pennsylvania Justices' views in *State Farm Mutual Ins. Co. v. Armstrong*, 949 F.2d 99, 102–104, *reh'g in banc denied* (3d Cir.1991); *see also, West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) ("When [the highest court of the state] has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted."). This is particularly so given the fact that *Nocito* can hardly be described as articulating ancient doctrine that serves some arguably outdated policy.

*See, e.g., Rothman v. Fillette*, 503 Pa. 259, 266, 469 A.2d 543, 546 (1983) ("There is a strong judicial policy in favor of parties voluntarily settling lawsuits."); *Gray v. Nationwide Mutual Ins. Co.*, 422 Pa. 500, 223 A.2d 8, 13 (1966) ("it is fundamental that the law favors settlements").

There is no authority suggesting that the Pennsylvania Supreme Court's policy favoring settlements, and securing the finality of amicable resolutions of disputes, is not as strong as it ever was.[3] We therefore decline plaintiffs' invitation to overrule *Nocito* based upon *Briggs*.

The terms of the settlement bargained between plaintiffs and Cessna leave no doubt that they intended to settle all claims the Dempseys had against Cessna, even those unknown to them. As is common in Pennsylvania releases, the Joint Tortfeasor Release plaintiffs gave Cessna provided, in relevant part:

> We, Chester Dempsey and Helen Jane Dempsey (hereinafter referred to as Releasor) for and in consideration of the sum of Three Hundred Thousand Dollars ($300,000.00) to be paid to us by The Cessna Aircraft Company only, (hereinafter referred to as Releasee) do hereby remise, release and forever discharge the said Releasee ... from all causes of action or claims, *known or unknown*, for damages arising out of the [state court action].... It is the intention of Releasor that this Release shall be complete and shall cover all such damages, injuries and claims against Releasee, it shall not be subject to any claim of mistake of fact and that it expresses full and complete settlement of a liability claimed and denied, and is intended to avoid litigation between the parties to this Release and is to be final and complete as between them. (Emphasis added.)

Plaintiffs signed this Joint Tortfeasor Release represented at all times by one of

---

**3.** The voices from the Pennsylvania Superior Court are not in unison. Notwithstanding the fact that the Superior Court in *Briggs* cites *Hess* as consistent with its holding, we do not view these decisions as readily reconcilable. Nonetheless, the apparent incongruence of those decisions is irrelevant to our enterprise here. Whatever the utterances of the Pennsylvania Superior Court in *Briggs*, there has been no suggestion from the Pennsylvania Supreme Court that that Court is prepared to retreat from the *Nocito* rule.

the most experienced aviation lawyers in America. After twenty-three years' practice in aviation cases [4] plaintiffs' counsel has, according to the reported decisions in the GENFED and STATES LEXIS libraries, been involved in no less than forty-four reported decisions, the bulk of them having to do with aviation liability claims. Indeed, as will be seen below in the analysis of the Rule 11 motions, Cessna and plaintiffs' counsel are hardly strangers to one another.

The particular circumstances of this case, therefore, would seem to present the least likely setting in which to depart from the *Nocito* rule.

Settlements before trial are by definition entered into on incomplete records. Pretrial disputes about compliance with the discovery rules (regrettably) abound. To allow parties to pretrial settlements to keep the benefits of their bargains and still get more would destroy the finality and certitude the parties receive in settlements in exchange for surrendering the contingencies of their claims and defenses against each other. Unsurprisingly, Pennsylvania law calls for no such extraordinary result.

Plaintiffs will therefore keep the bargain they made in October of 1991, but will not be allowed to bite at the same apple again. Cessna's motion to dismiss will, therefore, be GRANTED.

### AAU's Motion to Dismiss

Plaintiffs also seek to assert a direct claim against Cessna's insurer, American Aviation Underwriters, as well as AAU's Claims Manager, Lonnie Williams. The gist of the Dempseys' claim against the insurer is that, working with its insured, Cessna, AAU withheld the document that plaintiffs now say would have radically increased the value of their claim against Cessna.

■ In order for plaintiffs to maintain any claim against AAU, there must be some legal duty AAU owed plaintiffs. If, as plaintiffs seem to suggest, the insurer was at one with its insured in this enterprise, plaintiffs' claim against the insurer must necessarily fall, as its claim against the insured did, pursuant to the analysis set forth at length *supra*. If plaintiffs have any claim against the insurer greater than, or independent of, their claim against Cessna, it must exist because of a separate legal duty AAU owed plaintiffs.

Because of the importance of this latter point, and because we were not satisfied with the parties' initial canvassing of this issue, we ordered supplemental briefing.[5] We benefitted from extensive oral argument on December 27, 1991, and supplemental submissions received later.

It is useful to begin with a brief review of Cessna's insurance coverage with AAU. AAU's coverage of Cessna would not include payment of any settlement or judgment in either the settled state court action or the present litigation, had either gone to verdict. It is undisputed that Cessna's insurance arrangement with AAU has a nine-figure retention for both losses and defense costs applicable to the Dempseys' claim. As of the oral argument, Cessna's incurred judgments, settlements and defense costs were under twenty-five percent of this applicable retention.[6] Thus, in the resolution of the state court action Cessna was only using its own money.

Doubtless in recognition of the fact that no one from AAU directly negotiated with either the Dempseys or their counsel, the Dempseys now [7] claim that AAU was, in

---

4. Transcript at 34–35.

5. Besides ordering briefing on the existence of a duty, we also asked counsel to advise us of their views as to whether New York or Pennsylvania law applied to the claim against AAU because it appeared that AAU was, as alleged, a New York insurer. We ultimately learned that AAU is an unincorporated association of twelve insurers, having its principal place of business in New Jersey. *See* Transcript at 71. Nothing has been

brought to our attention to suggest that any conflict exists among the states cited, and indeed it would appear that Pennsylvania's laws, which the parties agree apply, conform with the precepts cited herein.

6. *See* Declaration of Lonnie W. Williams, dated January 8, 1992.

7. Transcript at 78–79.

fact, dealing directly with them in the person of Cessna's counsel. At oral argument, the Dempseys' counsel flatfootedly stated that Mr. Wellington, who throughout the state court and federal court litigation was Cessna's counsel, was also AAU's "agent."[8] On the undisputed reality of Cessna's insurance arrangement with AAU, however, Mr. Wellington was both legally and factually representing only Cessna. Cessna's money paid Mr. Wellington. Cessna's money, and only Cessna's, was at risk. Even if a more traditional insurance arrangement existed here, however, Mr. Wellington's ethical duty was exclusively to the insured, Cessna, and not AAU. *See* ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1476 (1981), *reprinted in* P. Allen, L. Occhino, R. Robins & R. Wells, *ABA/BNA Lawyers' Manual on Professional Responsibility* 801:326 (1986); *Point Pleasant Canoe Rental, Inc. v. Tinicum Township*, 110 F.R.D. 166, 170 (E.D.Pa.1986) and cases cited therein; Rule of Professional Conduct 1.7, Comment "Interest of Person Paying for Lawyer's Service," *reprinted in Pennsylvania Rules of Court*, 834–835 (1991). Plaintiffs' "agency" theory is, therefore, without merit, and they are therefore left to find a naked legal duty existing between a distant AAU and themselves.

No Pennsylvania case has been brought to our attention that questions the absence of a legal duty an insurer of a commercial insured owes claimants against its insured. As the Fourth Circuit noted about a contention similar to what the Dempseys' make here:

> Such an argument assumes that an insurance carrier which, in reviewing with its insured a claim against the latter learns that its insured was at fault in some particular, owes a duty to advise

the claimant of such dereliction on the part of its insured. Obviously, the carrier has no such duty and no court, so far as we know, has ever so held.

*In re A.H. Robins Co., Inc.*, 880 F.2d 709, 751 (4th Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989).[9] Although one could hypothesize more difficult cases—where, for example, representatives of the insurer directly conducted settlement negotiations that defraud the claimant[10]—that scenario simply did not occur here.[11] Nowhere in plaintiffs' new complaint is there an allegation that AAU in effect took over the negotiations; to the contrary, the settlement was the result of the efforts of Cessna's counsel, a well-known and respected major Philadelphia law firm. Indeed, the alleged villain within AAU, Mr. Williams, never left his office in Overland Park, Kansas, or spoke directly with plaintiffs' counsel prior to the consummation of the settlement.

To accept the existence of an independent duty of an insurer to claimants of commercial insureds would necessarily mean that any settlement with an insured defendant would also have to include its insurance carrier. It is difficult to see how such an added complication would promote the strong Pennsylvania policy, noted above, favoring settlement of civil litigation.

Under these circumstances, because AAU owed no duty of any kind to plaintiffs, AAU's motion to dismiss must be GRANTED.

### Lonnie Williams's Motion to Dismiss

Defendant Lonnie Williams has filed a motion to dismiss under Fed.R.Civ.P. 12(b)(2) in addition to his motion under Fed.R.Civ.P. 12(b)(6). Although under the

---

**8.** Transcript at 78.

**9.** Citing *Nipper v. California Automobile Assigned Risk Plan*, 19 Cal.3d 35, 136 Cal.Rptr. 854, 860, 560 P.2d 743, 749 (1977) ("[w]e are aware of [no authority] which suggests that an insurer ... either stands in a special relationship with the applicant or his potential victims, or alternately owes any affirmative duty of inquiry or disclosure regarding the applicant.").

**10.** This allegedly was the case in *Briggs*, where an insurance carrier took over direct negotiations with unsophisticated parties who ultimately agreed to settle.

**11.** It is conceivable that an insurer could, under some circumstances, by its actions take on a fiduciary's duty to speak. *Cf. Briggs v. Erie Ins. Group*, 406 Pa.Super. 560, 594 A.2d 761 (1991).

analysis of *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), it would appear more likely than not that personal jurisdiction does not exist as to Mr. Williams, we need not walk those difficult paths because of our disposition of the Rule 12(b)(6) motion of Mr. Williams' employer, AAU. There is certainly no basis in the complaint to conclude that plaintiffs' claims against Mr. Williams rise any higher than those against his employer, and therefore the action will be dismissed for failure to state a claim against Mr. Williams as well.

### Rule 11 Motion(s)

■ Reflecting the apparent blood feud at least between the insurer and plaintiffs' counsel, defendants AAU and Lonnie Williams have filed a motion for sanctions against plaintiffs' counsel pursuant to Fed. R.Civ.P. 11. Plaintiffs' counsel has, unsurprisingly, vigorously defended himself and has informally filed a cross-motion for such sanctions against AAU's counsel.

As is well known, Rule 11 provides, in relevant part:

> The signature of an attorney ... constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the complaint] is well grounded in fact and is warranted by existing law or a *good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. (Emphasis added.)

At a minimum, plaintiffs' counsel had the benefit of the Pennsylvania Superior Court's decision in *Briggs* that gave him, in our view, a good faith belief that the reasoning behind the *Briggs* holding might be extended to his clients' claims against Cessna, AAU and Mr. Williams. In the materials filed under seal in response to the motions against him, plaintiffs' counsel has also appended an affidavit of a former AAU Claims Adjuster that strongly suggests that AAU's admiration for plaintiffs' counsel is, like Colonel Qaddafi's for the United States, under firm control. This affidavit at a minimum gave plaintiffs' counsel a good faith basis for his averment that the defendants improperly hid the ball to the detriment of his clients.

Rule 11 represents an admonition to federal litigants and their counsel that they must observe limits to their advocacy. It also condemns an "anything goes" style of practice in federal court. It seems fair to say that the gist of plaintiffs' claims here is that they are the victims of an "anything goes" approach to the federal discovery rules. As noted at the outset of this Memorandum, this Court in no way condones such behavior, and thus we can understand and sympathize with the motivations that prompted the instant action. We therefore reject the contention that plaintiffs' counsel has filed this action in bad faith, and in contravention of Rule 11.[12]

---

12. In view of our disposition of AAU's motion, to the extent plaintiffs have made a Rule 11

motion against defendants or their counsel, it, too, is denied.