2025 PA Super 188

| | | |
|---|---|---|
| SEAN WEST AND AMY WEST, AS PARENT AND NATURAL GUARDIAN OF JULIANA WEST, A MINOR, INDIVIDUALLY AND IN THEIR OWN RIGHT AND NEW YORK PRIVATE TRUST COMPANY | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 1723 EDA 2023 |
| ABINGTON MEMORIAL HOSPITAL D/B/A ABINGTON HOSPITAL-JEFFERSON HEALTH AND REGINA P. STURGIS-LEWIS AND JOEL I. POLIN. | : : : : : : | |
| SEAN WEST AND AMY WEST, AS PARENT AND NATURAL GUARDIAN OF JULIANA WEST, A MINOR, INDIVIDUALLY AND IN THEIR OWN RIGHT AND NEW YORK PRIVATE TRUST COMPANY | : : : : : : : : : | |
| v. | | |
| ABINGTON MEMORIAL HOSPITAL D/B/A ABINGTON HOSPITAL-JEFFERSON HEALTH AND REGINA P. STURGIS-LEWIS AND JOEL I. POLIN. | | |

Appeal from the Order Entered May 23, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2020-06779,
2020-20339

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

DISSENTING OPINION BY McLAUGHLIN, J.:          **FILED AUGUST 28, 2025**

I must dissent. Respectfully, the majority significantly misapprehends both the Release and precedents in reaching its conclusion that the Release precludes the instant suits. I also respectfully disagree with its determination that the Release's integration clause is an impediment. When I consider the language of the Release, the full context of the cases, and the proper application of the parol evidence rule, I conclude that the Release poses no bar to the West's present claims.

I begin with the Release. The learned majority finds that it is fatal to these suits because, in its view, the suits "are not only 'in any way connected with' the occurrence underlying the claims the Wests released, they originated from the same source: the alleged malpractice." Majority Op. at 12.

I respectfully disagree. The instant claims are not "connected with" the rendering of "medical professional health care services." Rather, they arise out of wholly separate malfeasance allegedly committed during the subsequent litigation. The blurring of the distinction between the prior suit and the underlying medical care causes the majority to reach the incorrect conclusion that the present suits are barred.

The express language of the Release makes this intention clear. The first paragraph of the Release precludes claims for damages sustained "as a result of, arising from, or in any way connected with all **medical professional health care services**" that were the subject of the original suit. Release, 1/25/13, at ¶ 1 (emphasis added). The next paragraph states the Release is

- 2 -

intended to cover all known and future damages "which arise from, or are related to, **the occurrence** set forth in the Legal Action noted above." *Id.* at ¶ 2 (emphasis added). The "occurrence" refers to the rendering of medical professional health care services, *i.e.*, the events on which the medical malpractice suit was based. In paragraph 8, the Release states it represents the settlement "of any and all claims on account of the injuries and damages above-mentioned, and for the express purpose of precluding forever any further or additional suits arising out of the aforesaid claims." *Id.* at ¶ 8. The "injuries and damages above-mentioned" and "the aforesaid claims" are those claims arising from or related to the rendering of medical services. The Release simply does not address the instant claims.

The learned majority's explanation of its ruling includes the tag-on statement that the suits "originated from the same source" as the Wests' prior claims. This appears to be a harkening to the actual contract language, but the majority's analysis is still deficient. The Release language, read as a related whole rather than as a series of independent declarations, does not apply to the instant claims.

This understanding of the Release language is consistent with Pennsylvania law. No reasonable litigant would think that generalized language releasing claims related to medical care precluded a suit for fraudulent conduct that resulted in the Release itself, without explicit contract language plainly saying as much. This principle in similar form has been part of the Commonwealth's law of indemnity contracts for more than a century.

Pennsylvania law will not read an indemnity provision as requiring indemnification for one's own negligence, even if the agreement's general language otherwise might appear to include such conduct, absent specific contract language to that effect. **See Ruzzi v. Butler Petroleum Co.**, 588 A.2d 1, 4 (Pa. 1991);[1] **Perry v. Payne**, 66 A. 553, 557 (Pa. 1907). Fraud is of course much more egregious than negligence.[2] It is not in the public interest to readily construe generalized release language or a general integration clause as applying to fraud in the inducement.

The majority's attempted distinction of **Eigen v. Textron Lycoming Reciprocating Engine Div.**, 874 A.2d 1179, 1185 (Pa.Super. 2005), only serves to emphasize this point. There, this Court allowed a cause of action for fraudulent inducement. The majority finds **Eigen** distinguishable because in that case, there was "no indication that the agreement was memorialized in a written release, let alone one that contained an integration clause[.]" Majority Op. at 12 n.2. In other words, the majority concludes that so long as someone committing fraudulent inducement manages to convince the other party to

---

[1] "The law has been well[-]settled in this Commonwealth for [117] years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification." **Ruzzi**, 588 A.2d at 4, *quoted in* **Sunoco (R&M), LLC v. Pa. Nat'l Mut. Cas. Ins. Co.**, 322 A.3d 930, 951 (Pa.Super. 2024).

[2] The Wests' allegations raise serious ethical questions. **See** Pa.R.P.C. 3.4.

sign a contract with an integration clause, the fraud is immunized. Such a result is untenable.

Indeed, the law has taken a much more careful approach to the application of the parol evidence rule to claims of fraud in the inducement than the majority acknowledges. Certainly, in cases of fraud in the inducement, "parol evidence is inadmissible where the contract contains terms that deny the existence of representations regarding the subject matter of the alleged fraud." **Youndt v. First Nat'l Bank of Port Allegany**, 868 A.2d 539, 546 (Pa.Super. 2005). However, "when the contract contains no such term denying the existence of such representations, parol evidence is admissible to show fraud in the inducement." **Id.**, *quoted in* **SodexoMAGIC, LLC v. Drexel Univ.**, 24 F.4th 183, 215 (3d Cir. 2022). The majority instead follows an essentially absolutist approach,[3] in conflict with **Youndt**.

The learned majority also misreads other precedents. It relies primarily on three cases for the proposition that "arising out of" embraces "but-for" causation and is fundamentally a broad concept: **Werner v. 1281 King Assocs., LLC**, 327 A.3d 291, 300 (Pa.Super. 2024), **McCabe v. Old Republic Ins. Co.**, 228 A.2d 901, 903 (Pa. 1967), and **Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.**, 170 A.2d 571, 573 (Pa. 1961).

_____

[3] **See** Majority Op. at 16 (stating that "the Wests are prohibited from admitting evidence to show that they signed an agreement, which indicated that it did not include any understanding that did not appear within the writing, because they had justifiably relied upon an understanding that was not included in the writing").

The learned majority quotes **Werner** as stating that "the phrase 'arising out of' [means] 'causally connected with' (but[-]for causation), and not proximate causation." Majority Op. at 10 (quoting **Werner**, 327 A.3d at 300) (alteration in original). However, in finding the release in **Werner** barred the plaintiff's claims, we did not purport to prescribe a meaning of "but-for causation" to the phrase "arising out of" every time it is used in a release. We merely agreed with the trial court that the parties' use of "arising out of" in the context of the release at issue was clearly and unambiguously intended to apply to the claims at hand. **Werner**, 327 A.3d at 300. The release at issue in **Werner** released the defendants against claims "in any way arising out of, relating to, or having any connection with" a distributor agreement, and the plaintiff in that case "sought to recover damages for the injuries he sustained while performing his contractual obligations under" the agreement. **Id.** We found the plaintiff's allegations "had a clear causal connection" to his performance of the responsibilities he assumed in his agreement to distribute the defendant's products. **Id.**

Here, in contrast, the Wests released Appellees from claims arising from their rendering of medical care. Appellees' rendering of medical care does not bear as clear a causal connection to the fraud or negligence they allegedly committed during the legal action. **Werner** does not require that we interpret "arising out of" in the broadest sense possible.

The other cases do not support this contention, either. In **Goodville**, the Supreme Court found the phrase "arising out of" in an insurance contract

to be ambiguous. *Goodville*, 170 A.2d at 573. Thus, in accordance with the principle specifically applicable to insurance policies, the Court construed the term strictly in favor of the insured and interpreted it as meaning but-for causation. *Id.*

The Release here settled a legal action. It was not an insurance policy, and we do not construe it strictly against the Wests.

In *McCabe*, another insurance case from the 1960s, the plaintiff/employer sought to recover from its insurer, despite the policy's language excluding liability for the death of an employee "arising out of and in the course of his employment with the insured." *McCabe*, 228 A.2d at 903. The Supreme Court distinguished its holding in *Goodville*, stating that the phrase "arising out of," when used in an insurance policy, is not inherently ambiguous. *Id.* Rather, the Court explained the determining factor in *Goodville* had been "the context in which the words were employed[.]" *Id.* The *McCabe* Court found the exclusionary clause at issue, "when read in its entirety," was "clear and definite" and applied to the plaintiff's claims because "there was an 'obvious causal connection' between [the employee's] employment and death." *Id.* (discussing *Goodville*).

Thus, *McCabe* rejected a blanket rule that "arising out of" is an ambiguous phrase. Rather, the Court held that the phrase must be interpreted according to its plain meaning and in context. Here, in context, the plain

language of the Release bars claims arising out of Appellees' rendering of medical care, and not the instant allegations.[4]

Taken to its extreme, the majority's application of but-for causation leads to an absurd result. *See Starling v. Lake Meade Prop. Owners Ass'n, Inc.*, 162 A.3d 327, 346 (Pa. 2017) ("ambiguities are to be resolved in favor of a reasonable rather than an absurd or unreasonable interpretation"). If Appellees' vehicle had purposefully struck the Wests' vehicle as the parties left a meeting where they executed the Release, would the Wests' collision claims be barred by the Release? After all, the collision would not have happened but for the parties' being at that location, which would not have occurred but for the settlement of the underlying medical claims, which would not have occurred but for the underlying medical care.

I also take issue with the learned majority's construction of "in any way connected with." Relying on only a dictionary definition, the majority conclusorily states that the Wests' present claims are barred because, in the

_____

[4] I will not address at length the cases the majority cites in its second footnote. However, I do not read either case as requiring this Court to construe the parties' use of the phrase "arising out of" in the Release as encompassing but-for causation.

I also respectfully disagree with the learned majority that the cases it cites stand for the proposition that "the phrase 'arising out of' has been understood to broadly indicate some causal connection, not direct or proximate causation." Majority Op. at 11 n.2. The law requires the meaning of the phrase to be derived from the context in which it is employed. *McCabe*, 228 A.2d at 903.

majority's view, they are "in any way connected with" the provision of medical services. Majority Op. at 11.

As explained above, the claims the Wests now press are not "in any way connected with" the underlying medical care. The learned majority appears to believe they are because it views the measure of damages as being the difference between the full value of the case, if Appellees had disclosed the document, and the value they obtained under the Release. The learned majority's reasoning fails to acknowledge that the instant claims are not about the medical care, but rather fraudulent conduct during the ensuing litigation. Fraud in the inducement to sign a release is a separate and distinct action from the underlying claims, despite the overlap in damages between the two actions. *See, e.g., Del Pielago v. Orwig*, 151 A.3d 608, 613-18 (Pa.Super. 2016) (collecting fraud in the inducement cases); *Eigen*, 874 A.2d at 1185 (Pa.Super. 2005); *see also Briggs v. Erie Ins. Grp.*, 594 A.2d 761, 763 (Pa.Super. 1991) (noting the distinction between claims alleging fraudulent or negligent legal advice given in connection with a settlement agreement, and the underlying claims that were dispatched by the settlement, because "there are issues in this case that were not litigated in the medical malpractice case")

(citation omitted).[5, 6] To the extent "connected with" may be interpreted to include the measure of damages, I do not think we should so blithely conclude that the Wests agreed to release fraud that resulted in the Release itself, absent some explicit textual indication in the Release to that effect. **See supra** at 3-4 & n.1.

Furthermore, I respectfully disagree that the parol evidence rule poses a hurdle for the Wests. The Release's integration clause states "that there are no written or oral understandings or agreements, directly or indirectly, connected with this release and settlement, that are not incorporated herein."

_____

[5] **Briggs** has been disapproved insofar as it "can be interpreted as holding that an action to rescind a release for fraud and an action to recover damages for fraud are not the same cause of action for purposes of res judicata." **Dempsey v. Cessna Aircraft Co.**, 653 A.2d 679, 682 (Pa.Super. 1995). A party alleging fraudulent inducement of a release may elect to rescind the release, or to recover damages, but may not do both in succession.

[6] Contrary to the learned majority's characterization, I do not conflate fraud in the inducement with fraud in the execution. **See** Majority Op. at 12 n.3. I only disagree that the parol evidence rule bars the Wests' claims, as they do not hinge on express but unincorporated promises Appellees made to the Wests to induce them to sign the Release. **See infra** at 9-10.

I also respectfully cannot agree with the learned majority's statement that "the omission of a document in discovery is [not] tantamount to taking advantage of an incapacitated person or an affirmative misrepresentation about the settlement funds available." Majority Op. at 12 n.3. "To succeed on a claim of fraudulent inducement, the complaining party must show intent to mislead." **Eigen**, 874 A.2d at 1187. The allegations here are that Appellees purposefully or negligently concealed an inculpatory document, causing the victims of egregious medical malpractice to accept a lower settlement amount. I find this to be separate and distinct malfeasance, unconnected with the rendering of medical care, and which sets forth the elements for claims of fraudulent or negligent misrepresentation.

Majority Op. at 14 (citing Release at ¶ 6). The majority puts the blame on the Wests for failing to insist the Release include language specifically preserving their right to advance claims related to discovery violations. *Id.* at 18.

Pursuant to the parol evidence rule, even where there is an integration clause, parol evidence is admissible to show fraud in the inducement so long as the contract contains no term denying the existence of representations regarding the subject matter of the alleged fraud – here, the failure produce in discovery the August 30, 2006 memo. *See Youndt*, 868 A.2d at 546. In this case, neither the integration clause nor anything else in the Release contains a disclaimer of any prior representations, let alone representations about discovery or the August 30, 2006 memo. It only mentions "understandings" and "agreements." The parol evidence rule is thus no hindrance to this suit. *See SodexoMAGIC*, 24 F.4th at 215-16 (applying *Youndt* to find parol evidence admissible in suit for fraudulent inducement, where integration clause disclaimed only prior agreements, not prior representations).[7]

Any representations Appellees may have made about their compliance with discovery were plainly not "understandings" or "agreements" with the Wests in connection with the Release and settlement. A litigant's duty to produce discovery documents in the litigant's possession, or truthfully say

---

[7] We treat inferior federal court decisions as persuasive, but not binding. *See Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 883 n.10 (Pa. 2006).

- 11 -

they are not, arises not from a private agreement, understanding, or representation, but from Pennsylvania law. A party responding to a request for production must by the deadline for giving a response either state an objection to a request or "produce or make available" the requested materials. Pa.R.Civ.P. 4009.12(a)(2). There is no middle ground allowing for false or misleading responses. Furthermore, the response must be "verified," as was the response at issue here. *See* Pa.R.Civ.P. 4009.12(c); Second Amended Complaint, ¶ 36; R.R. 53a.[8] The response was thus made subject to the criminal penalties for making unsworn falsification to authorities. *See* Pa.R.Civ.P. 76 (defining "verified"); 18 Pa.C.S.A. § 4904 (defining criminal offense of unsworn falsification to authorities).

Here, the Wests' claim is not that Appellees made promises to them "connected with [the Release] and settlement," and then reneged on those unincorporated promises. It is that Appellees provided false information during their performance of a separate legal duty. The integration clause simply does not apply to these claims. Moreover, Appellees do not assert that any other agreement to settle a legal action has ever included language ensuring the parties honestly complied with their various legal obligations during the court process. I do not think we should burden plaintiffs who consider settling their

---

[8] *See also* Trial Ct. Op., 5/18/23, at 9 (finding no civil remedy for "unsworn falsification of a verification"). I harbor serious doubts of the wisdom of this conclusion, which is the upshot of the majority's decision. However, this policy question is not directly before us.

claims with the onus of considering whether, and in what manners, the defendants might have disregarded these obligations.

In sum, I find the Release did not release Appellees from liability on the instant claims, and the parol evidence rule does not bar the claims because Appellees' compliance with discovery does not constitute an "understanding or [agreement]" between the parties.

Because I find the tort claims are not barred, I address the trial court's second rationale for granting judgment on the pleadings: that the Wests did not seek to rescind the Release. That is plainly an error. Pennsylvania law provides "that the victim of fraud in the inducement has two options: (1) rescind the contract, or (2) affirm the contract and sue for damages." *Eigen*, 874 A.2d at 1184. In contrast, a claim of an "innocent" misrepresentation affords the claimant only the remedy of rescission. *See Growall v. Maietta*, 931 A.2d 667, 674 (Pa.Super. 2007). The Wests are not limited to seeking rescission only.

For the foregoing reasons, I respectfully dissent.