Mullin *v.* Gano, Appellant.

Argued January 7, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*C. W. Van Artsdalen,* for appellant.

*Earl G. Harrison,* with him *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, January 27, 1930:

From a judgment against him in an action of deceit, defendant prosecutes this appeal. The only error disclosed by the record is in sustaining the verdict for a larger amount than plaintiff, by his own showing, was entitled to recover. This we have a right to and will correct without reversing the judgment: Summers v. Kramer, 271 Pa. 189; Lukens v. Wharton Ave. Baptist Church, 296 Pa. 1; Whalen v. Smith Fireproof Construction Co., 296 Pa. 10.

Defendant and others entered into an agreement to purchase a tract of land in Florida, and paid the down-money required. Before the settlement was made, they decided to ask plaintiff to join with them, and defendant was selected to lay the matter before him. According to plaintiff's story,—which, upon ample evidence, the jury believed, and which therefore we must accept as true,—defendant said to plaintiff that the property was to cost $48,000, subject to mortgages aggregating $42,000, and that if plaintiff would join the syndicate and contribute $6,000, as the other seven members of it had each done, the $48,000 would be paid to the vendors, and each of the eight would have an equal interest in the purchase. Relying on these statements, plaintiff paid the $6,000. In point of fact, as defendant knew, the purchase price was to be $25,500 in excess of the mortgages, and this was all that was paid. After receiving plaintiff's money, the eight purchasers executed an agreement (which did not state what the property was to cost) whereby it was stipulated that one of their number should take title for the benefit of all, and endeavor to sell the property for $120,000; pending which sale, plaintiff, defendant and the other six interested were each to pay an equal part of the accruing costs, expenses, mortgage interest and taxes. The property never was

sold; a year or so after the purchase, the Florida land bubble burst, and thereafter the property could not be sold at any reasonable price. Plaintiff did not repudiate the transaction in its entirety, and demand the repayment of the $6,000, but joined with the other seven in trying to make the best of a bad bargain, and, finally, they all entered into a written agreement with the mortgagees, by virtue of which the latter took back the property and relieved the members of the syndicate from any further liability in regard to it.

Upon this state of facts, plaintiff admits that the ordinary rule is that he would be entitled to recover the whole of the amount paid, if, after learning of the fraud practised on him, he promptly rescinded and notified defendant that he had done so; or, if he did not do this, then he could only recover the difference between the amount paid and the actual value of the one-eighth interest in the property. This is undoubtedly the law: Curtis v. Buzard, 254 Pa. 61; Browning v. Rodman, 268 Pa. 575; Grant v. Lovekin, 285 Pa. 257; Kriner v. Dinger, 297 Pa. 576. He claims, however, that the general rule should not apply here because of subsequent occurrences. On the point under consideration, we are not interested in "subsequent occurrences," but only in plaintiff's acts when he learned of the fraud. He then had the choice as to how to treat the transaction, but he never repudiated it in its entirety, nor did he notify defendant he had any such intention. On the contrary, the record shows that he knew he was going into a speculative venture, and intended to go into it on equal terms with the other members of the syndicate. At no time, either in pleadings or proof, has he ever contended other than, as expressed in the last paragraph of his statement of claim, that "he was induced to pay more than his share of the purchase price." So far as appears, he never asserted, not even in his testimony at the trial, that he wished to escape sharing with the others the resulting loss; what he sought was to recover

back the excess amount he had paid because of the misrepresentations of plaintiff. At all times, after as well as before he learned of the fraud, he acted with the other members of the syndicate, exactly as he would have done had there been no misrepresentations, and this also, without more, would prevent a recovery of the entire sum paid: Browning v. Rodman, supra; Levine v. Pittsburgh State Bank, 281 Pa. 477. It is clear, therefore, that the limit of plaintiff's recovery must be the difference between the amount paid, and the actual value of the one-eighth interest purchased.

What was that actual value? Plaintiff says it was worth nothing, but offered no proof as to this, relying entirely on the fact that the syndicate ultimately received nothing for the property. That it was worth nothing after the bubble burst, does not prove it had not a market value before. All the actions of the syndicate members, including plaintiff, show that, at the time they bought, they considered it worth at least the purchase price. Moreover, this contention is in direct antagonism to plaintiff's tacit admission that he only desired equality of treatment with the other members. Defendant, on the other hand, contends that as there was no evidence of the value of the property at the time plaintiff paid the $6,000, there was nothing by which to measure his damages. As stated, the purchase by the syndicate, of which plaintiff and defendant were members, was some evidence that it was worth the price paid. Moreover, as the jury have found, plaintiff was to have the one-eighth interest at one-eighth of the actual purchase price, and hence the fraud resulted in obtaining from plaintiff one-eighth of the difference between what defendant asserted was the price and what it in fact was.

Plaintiff further contends that the general rule as to the measure of damages is not applicable here, (1) because of the mortgages on the property, which made the equity of redemption less than it was supposed to be;

and (2) because plaintiff's money was not given to, and his agreement as to the purchase and control of the property was not made with defendant, but to and with the syndicate of eight members. But neither of these things is of the slightest moment. They did not stand in the way of plaintiff's rescinding the contract when he learned of the fraud, nor did they increase or diminish his right to recover the difference between the amount he paid and the one-eighth of the cost.

It follows that plaintiff must be treated as having elected to remain a beneficial owner of the property, and, on this branch of the case, we have only to determine what was the excess amount paid by him because of the misrepresentations of defendant. This is readily ascertainable. He paid $6,000, whereas one-eighth of the actual purchase price of $25,500 was $3,187.50, the difference of $2,812.50 being his damages. Hence this was the limit for which judgment should have been entered by the court below, and it should now be reduced thereto, and affirmed as so reduced, unless the assignments disclose trial errors of which defendant, who appeals, can justly complain.

A careful review of the record fails to disclose any such errors, however, and those assigned require but little consideration. The letters written by defendant to third parties show the total purchase price of the property, and hence were admissions against interest, tending to prove the extent of the fraud. The law does not require a deceived party to prove that defendant's false and fraudulent representations were the "*sole* reason and inducement for the plaintiff to invest his money"; it is sufficient that they "constituted a *material* inducement" thereto: Gillespie v. Hunt, 276 Pa. 119; Dunbar v. Preston, 285 Pa. 502. There was no evidence that any one else was or was claimed to be jointly liable with defendant for the cause of action sued on, and hence plaintiff's release of some other person, if there was one, is a matter of no moment. The agree-

ment of the eight purchasers regarding the taking of title to and selling the property, made after plaintiff parted with his money, cannot possibly relieve defendant: Dunbar v. Preston, supra. It would unduly prolong this opinion to review the other assignments; they are without merit.

The judgment of the court below is reduced to $2,-812.50, and, as thus reduced, is affirmed.