Tilghman, Appellant, *v.* Dollenberg.

Argued April 27, 1965.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Augustus S. Ballard,* with him *Pepper, Hamilton & Scheetz,* for appellant.

*Judah I. Labovitz,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 29, 1965:

Plaintiff appealed from an order granting a new trial after verdict for plaintiff in an action of trespass for fraud and deceit. Plaintiff was a manufacturer's representative, selling the products of U. S. Igniter Corporation. The company manufactured various types of spark plugs. The plaintiff, believing that the company had some growth potential, decided to purchase some shares of stock which were being offered to the public by a brokerage company in Philadelphia. The broker's price was $3 a share. The plaintiff talked to defendant, the president of U. S. Igniter Corporation, about buying some of the stock. The defendant told the plaintiff that he could get some stock for him at $2 a share, which stock was owned by Harry L. Hardy and W. T. Chamberlain. The plaintiff, at defendant's direction, made out two checks on October 28, 1955, one to Harry L. Hardy for $4,000 and the other to W. T. Chamberlain for $10,000, and delivered them to the defendant. Stock Certificate No. 166 for 7,000 shares of U. S. Igniter Corporation Stock was issued to the plaintiff on the 21st of November, 1955. The certificate was signed by the defendant as president, and signed by the secretary. Two years later, the company was adjudicated bankrupt.

Appellant's name did not appear on the list of stockholders, and he was not given notice of the bankruptcy proceedings. The evidence, as produced at trial, indicated that the proceeds of Tilghman's checks found their way into the possession of Dollenberg and were

never accounted for on the financial ledgers of the U. S. Igniter Corporation, and that Hardy and Chamberlain were never shareholders of the corporation. However, an examination of the stock certificate book of the corporation showed that Certificate No. 166 was issued to Richard A. Tilghman on November 21, 1955. The stub in the stock certificate book did not show any previous owner of the shares issued to Mr. Tilghman.

The trial judge instructed the jury that ". . . let me tell you that if you find a verdict, it must be either in the amount of $14,000 plus interest from October 1955 at 6 per cent to date, or your verdict will be nothing." The court affirmed a point, inter alia, submitted by plaintiff, stating to the jury: "In a suit for conversion the measure of damages is the value of the property converted at the time and place of conversion. *The measure of damages in this case is the value of plaintiff's checks at the time they were delivered to defendant* and the subsequent bankruptcy of U. S. Igniter Corporation is irrelevant and immaterial." (Emphasis ours). The court en banc held that the jury was not properly instructed on the measure of damages, stating: "A more serious consideration is defendant's allegation of error as to the court's charge with respect to damages. The court charged that plaintiff could recover the money given by plaintiff to defendant. This charge would be correct if at the time of the fraud, the defendant gave nothing of value to the plaintiff. The plaintiff, however, did receive value—he received shares in the corporation. This is so even though defendant did not turn over to the corporation the moneys received by him for the sale of the stock but instead converted the same to his own use. . . . The defendant not only committed a fraud on . . . [plaintiff], he also breached a fiduciary duty which he owed to the company, viz. United States Igniter Corporation."

A factual determination of the value, if any, of the stock issued to the plaintiff should have been made by the jury. The stock certificate on its face was valid and came from the stock certificate book of the corporation and, at the time, there was being issued to the public, through a broker, shares of the corporation.*

The trial court, in its charge to the jury, treated the stock as worthless and having no value. It could be true that the stock did not have any value; however, the jury should make that factual determination from the evidence. Under the instructions, the jury was not permitted to do this. If the stock was watered, the jury should have considered what that reduced value was at the time it was purchased by the plaintiff. The trial court interrogated Mr. Tilghman as follows: "Q. Mr. Tilghman, you said you were not concerned with the identity of the sellers so long as you obtained valid shares? A. Yes. Q. What do you mean by valid shares? A. Well, sir, if Mr. Hardy and Mr. Chamberlain existed and I bought their stock, I bought shares of the corporation which previously to my owning them had belonged to somebody else. If those men did not exist and I brought money that didn't go into the corporation and received certificates which are there on the desk, the total number of shares outstanding among other stockholders must have been diluted. In other words, if my certificates were just, so to speak, issued from the books of the corporation and put on the market, I being the purchaser in the market place, everybody's ownership in the company is diluted by the number of those shares as those shares did not exist previous to the time they were issued to me. Therefore, in the parlance of the stockbrokers, they are watered."

The grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or er-

---

* Compare Act of 1933, May 5, P. L. 364, §610, 15 P.S. §2852-610.

ror of law which controlled the outcome of the case. *Weed v. Kerr,* 416 Pa. 233, 234, 205 A. 2d 858 (1965), and cases cited therein. The trial court's charge to the jury on the measure of damages was basically and fundamentally erroneous and could only be corrected by the grant of a new trial. The court en banc properly awarded a new trial, and we will not disturb the Order.

This court said in *Emery v. Third Nat. Bank of Pbg.,* 308 Pa. 504, 162 A. 281 (1932) at p. 517: "For measuring damages arising from fraud and deceit there are two formulas applied in differing jurisdictions. There is the contract-warranty rule which allows the plaintiff to recover the difference between the actual and represented value of the property he purchased. This rule gives the deceived plaintiff the value of his bargain. It is recognized in the following cases: Morse v. Hutchins, 102 Mass. 439; Antle v. Sexton, 137 Ill. 410, s.c. 27 N.E. 691; Estes v. Odom, 91 Ga. 600, s.c. 18 S.E. 355; Molnar v. Beriswell, 122 Ohio St. 348, s.c. 171 N.E. 593. The second rule called the tort rule permits the plaintiff to recover only his actual loss. This rule prevails in Pennsylvania. 'The measure of damages in an action of deceit for fraud in the sale of stock is the difference between what the plaintiff was induced to pay for the stock and its actual value at the time of the purchase': Curtis v. Buzard, 254 Pa. 61, 64, 98 A. 777.

" 'The measure of damages in an action for deceit in the sale of stock is the difference between the real value of the stock at the time of the sale and the fictitious value at which plaintiff was induced to purchase it. It's the money he parted with without receiving an equivalent therefor': High v. Berret, 148 Pa. 261, 23 A. 1004."

Appellant's position is that the proceeds of the plaintiff's checks were fraudulently converted by the de-

fendant. This would appear to be true from the evidence, and the jury so found. However, the appellant did receive something, whatever value, if any, the shares of stock had, and the jury should have been properly instructed to make this determination. If the stock transferred to the appellant was valueless, he, of course, was defrauded to the extent of the purchase price that he paid for the stock, and he may recover, with interest, all he parted with, in an action for fraud and deceit. If the stock had any value, that amount should be deducted. *Dunbar v. Preston,* 285 Pa. 502, 132 A. 707 (1926). A party who has been induced by fraud to purchase stock may, if he does so promptly, rescind the contract and sue for the entire purchase price of the stock. Where, however, as in the instant case, the plaintiff does not rescind the contract but elects to stand on it, he may not recover back the entire purchase price, but only the difference between the real value of the property purchased at the time of sale and what was paid for it, in an action of trespass for fraud and deceit, rather than of assumpsit. The plaintiff in this case began his action in assumpsit, later amending it as an action of trespass. The measures of damages in the two actions are different. *Grant v. Lovekin,* 285 Pa. 257, 132 A. 342 (1926). The affirmance of a contract induced by fraud of the seller does not extinguish the right of the purchaser, and it is not a waiver of the fraud, nor does it bar the right of the purchaser to recover damages for the fraud. *Emery v. Third Nat. Bank of Pbg.,* 314 Pa. 544, 548, 549, 171 A. 881 (1934). See also *Neuman v. Corn Exch. Nat'l Bank & Trust Co.,* 356 Pa. 442, 51 A. 2d 759 (1947) ; *Peters v. Stroudsburg Trust Co.,* 348 Pa. 451, 35 A. 2d 341 (1944) and *Hoagland v. Mulford,* 298 Pa. 588, 148 A. 864 (1930).

Order affirmed.

Mr. Justice Cohen and Mr. Justice Roberts concur in the result.