Benjamin KAUFMAN, Nathan P. Jacobs, Philip Kessler, Morris Rapoport and Martin Bruce, Appellants,

v.

**MELLON NATIONAL BANK AND TRUST COMPANY.**

No. 14975.

United States Court of Appeals Third Circuit.

Argued Dec. 13, 1965.

Decided Sept. 23, 1966.

Rehearing Denied Oct. 14, 1966.

**328**

John L. Laubach, Jr., Sanford M. Lampl, Pittsburgh, Pa., for appellants.

Edmund K. Trent, Pittsburgh, Pa., (Steven A. Stepanian, II, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief) for appellee.

Before McLAUGHLIN, HASTIE and SMITH, Circuit Judges.

## OPINION OF THE COURT

WILLIAM F. SMITH, Circuit Judge.

This is an action in which the claims for damages are based on fraud, breach of contract and promissory estoppel. At the close of the evidence the defendant moved for a directed verdict in its favor and decision thereon was reserved. The issues were submitted to the jury on special interrogatories, as authorized by Fed.Rules Civ.Proc., rule 49, 28 U.S.C.A. The jury reported its inability to agree and was then discharged.

Thereafter the defendant moved for judgment in accordance with its earlier motion. The motion was granted and this appeal followed. The question for decision is whether the evidence, viewed in the light most favorable to the plaintiffs, was sufficient to preclude the entry of judgment on the motion and to require submission of the case to another jury.

## FACTS

Early in 1955, East Crossroads Center, Inc., (Center) undertook the development of a regional shopping center on a tract of land which it owned in suburban Pittsburgh. The property was subject to a mortgage given to the defendant as security for a construction loan in the amount of $807,000. By letter of commitment dated November 13, 1957, John Hancock Mutual Life Insurance Company (Mutual) agreed to lend Center the sum of $5,200,000, upon completion of the project, the loan to be secured by a first mortgage which would supplant the mortgages to which the property was then subject. The other terms and conditions of this agreement are not relevant to the issues now before us.

Thereafter Center obtained from the defendant a loan commitment by the terms of which the defendant agreed to lend Center for construction purposes a sum not to exceed $4,100,000; the amount was later increased to $4,500,000. The terms and conditions of the commitment were made the subject of a construction loan agreement dated March 11, 1958. Thereunder Center was entitled to borrow or to have advanced on its account such sums as were required for construction purposes, subject however to the right of the defendant to verify Center's requirements by audit, site inspection, or otherwise. The loan was secured by a first mortgage in the amount of $5,200,-000.

Section 3.3 of the construction loan agreement contains this pertinent clause:

> "Nothing herein contained shall prohibit Lender from advancing larger amounts hereunder or making advances more frequently than herein specified if Lender shall deem such deviations necessary for the protection of the Mortgaged Premises, the Improvements and Lender's interest therein, it being agreed that all such advances shall for all purposes be evidenced by the Note and secured by the Mortgage."

This clause, as we construe it, reserved to the defendant the discretion to make such advances as it deemed necessary to protect the mortgaged premises and Center's interest therein.

Under a contract dated March 11, 1958, Mellon-Stuart Company (Stuart) agreed to complete construction of the shopping center at a fixed price of $3,650,000, including specifically enumerated reimbursable costs. Performance of the construction contract was secured by a bond executed by Stuart, as principal, and Seaboard Surety Company, as surety; the defendant was named in a rider as a co-obligee. The provision as to reimbursable costs was modified by a supplemental agreement entered into contemporaneously with the general contract. Thereunder Center became obligated to pay to Stuart all reimbursable costs in excess of the contract price; later Stuart agreed to look solely to Center, and not to the project, for the payment of any excess. The supplemental agreement was duly recorded in Allegheny County.

The price was payable to Stuart in semi-monthly installments upon requisition by Stuart and the architect's certificate. However, the plan of payment was subject to the escalator clause, supra, contained in the loan agreement.

While the work on the project was in progress Stuart experienced some unforeseen difficulties which increased the costs of construction. These difficulties were made known to the defendant which, in January of 1958, agreed to make payments to Stuart on requisition and without regard to percentage of completion. Thereafter several payments were made to Stuart pursuant to the discretionary authority reserved to the defendant under the escalator clause. However, it should be noted that the said payments were made from funds advanced by the defendant and not from funds later furnished by the plaintiffs.

As the result of information received in the latter part of 1958, the plaintiffs became interested in the project as investors. They conducted an investigation and, after a series of negotiations, entered into a contract with Center pursuant to the terms of which they agreed to purchase the shopping center on or before October 19, 1959, the expected completion date, and to lease the property to Center for a period of thirty years at an annual net rental of $610,750. The contract expressly provided that time was not of the essence and that either party would be entitled to adjourn the closing date for not more than ninety days after October 19. The transaction was finally consummated on January 19–21, 1959. Thereafter the plaintiffs were made co-obligees on the performance bond.

The agreed purchase price was $1,-250,000 over and above the amount of the first mortgage held by the defendant. The price was payable as follows: $250,-000 to Center upon consummation of the agreement on January 19, 1959; $500,-000, in installments, to be deposited with the defendant as disbursing agent for the plaintiffs; $500,000 to Center on the closing of title. The amount of $750,000, characterized as a loan, was made the subject of a separate agreement which provided that the amount was to be used solely to defray construction costs. As security for the so-called loan, Center executed and delivered to the plaintiffs a note and second mortgage. The separate agreement also provided that if Center failed to prosecute the construction of the shopping center with diligence plaintiffs would have the right to enter upon the mortgaged premises and to complete the work at the expense of Center.

The sums to be deposited with the defendant were to be advanced to Center in accordance with the schedule of payments set forth in the construction loan agreement between Center and the defendant. The disbursement plan was the subject of a supplemental contract between the plaintiffs and defendant. When this contract was entered into the defendant had already advanced to Center, or on its behalf, the sum of $2,991,-

616.52, pursuant to the terms of its commitment. The supplemental agreement provided that with each disbursement made on behalf of the plaintiffs the defendant would disburse from its own funds a sum not less than that disbursed on behalf of the plaintiffs.

The plaintiffs paid $250,000 to Center upon consummation of their agreement. Thereafter, between February and June of 1959, they deposited with the defendant the sum of $303,181.42, representing $325,000, less interest and attorneys fees, which they retained. This sum was advanced to Stuart in six installments which were paid between February 10 and June 24, 1959, inclusive. During the same period, and simultaneously with disbursements made on behalf of the plaintiffs, the defendant disbursed from its own funds a total of $733,142.92. The disbursements made by the defendant from its own funds exceeded those made from funds provided by the plaintiff by $429,961.50.

Some time in March 1959, Stuart informed the defendant that the estimated cost of completion would exceed its prior estimates by $600,000; by the end of June the projected deficiency increased to $857,000. The plaintiffs and defendant were informed that unless additional funds were made available Stuart could not complete the construction work. However, Stuart was unable to furnish a firm estimate as to the completion costs. Absent such an estimate the parties were unwilling to advance additional funds. Construction work was discontinued on September 18, 1959.

Pursuant to an informal understanding the plaintiffs on August 18, 1959, instituted proceedings to foreclose their respective mortgages. Decrees of foreclosure were entered but the sale of the property thereunder, initially scheduled for September 18, was stayed under restraining orders granted in actions commenced by Center. In the action against the defendant the stay was vacated and the sheriff's sale was then scheduled for

October 5, but was adjourned to October 9, at the request of the plaintiffs. Additional facts relating to the foreclosure proceedings are hereinafter summarized.

The defendant purchased the property at the sheriff's sale and took title in the name of East Hills Center, Inc., (East Hills). Thereafter all the stock of East Hills was sold for $5,637,487.47, of which $437,487.47 was paid in cash; the balance due on the purchase price was secured by a note and mortgage.

## CLAIM FOR DAMAGES BASED ON FRAUD

We find it difficult to ascertain from the complaint the specific theory upon which this claim for damages was predicated. However, it appears from a somewhat equivocal pretrial statement filed by the plaintiffs that they sought to recover $575,000, the total of sums advanced on account of the purchase price, and $3,000,000, representing a claimed loss of profits they would have realized if the contract for the sale of the property had been performed. These elements of damage will be discussed separately.

█ The plaintiffs maintained that in justifiable reliance on fraudulent representations made to them by a representative of the defendant they were induced to enter into the contract with Center for the purchase of the property. The burden was upon them to prove the fraud by evidence that was "clear, precise and indubitable." Highmont Music Corp. v. J. M. Hoffmann Co., 397 Pa. 345, 155 A.2d 363, 366 (1959); Gerfin v. Colonial Smelting & Refining Co., 374 Pa. 66, 97 A.2d 71, 72 (1953). The court below held that the proofs offered by the plaintiffs, viewed in the light most favorable to them, failed to meet this strict requirement. From our review of the evidence in its entirety we are convinced that this holding was correct. However, our ultimate decision on the issue of fraud rests on a further ground.

■ An essential ingredient of a cause of action based upon fraud is damage, in the absence of which fraudulent representations made prior to the consummation of a business transaction are of no legal consequence. Tilghman v. Dollenberg, 418 Pa. 604, 213 A.2d 324, 326 (1965); Edelson v. Bernstein, 382 Pa. 392, 115 A.2d 382 (1955) and the cases therein cited. The lower court concluded that the record was devoid of any evidence that the plaintiffs had sustained an actual loss. The question for decision is whether it erred in this conclusion. We are of the opinion that it did not.

■ The claim in the amount of $575,000 is essentially one for the recovery of that part of the purchase price advanced by the plaintiffs between January 21 and June 16, 1959, inclusive. The advance payments on the purchase price would have been recoverable in a suit for recision but they are not recoverable in the instant action. Tilghman v. Dollenberg, supra; Mullin v. Gano, 299 Pa. 251, 149 A. 488 (1930). In an action based upon fraud the purchaser is entitled to recover his actual loss measured by the difference between the price he paid and the value of that which he received, determined as of the time of the transaction. Tilghman v. Dollenberg, supra; Neuman v. Corn Exchange Nat. Bank & Trust Co., 356 Pa. 442, 51 A.2d 759, 766 (1947); Peters v. Stroudsburg Trust Co., 348 Pa. 451, 35 A.2d 341, 343 (1944). The court below correctly applied this criterion in its evaluation of the evidence as to damages.

The plaintiffs maintain that the application of the ordinary rule of damages in this case was error. They argue that they received nothing of value and are therefore entitled to recover the full amount of the advance payments. The fallacy in the argument lies in the erroneous premise upon which it is predicated. They ultimately lost the full amount of their investment but it does not follow that the property rights which they acquired at the time of the transaction were valueless.

■ When the plaintiffs consummated their contract with Center they immediately acquired equitable ownership of the shopping center, subject only to the first mortgage held by the defendant. Payne v. Clark, 409 Pa. 557, 187 A. 2d 769, 770 (1963); Petition of Governor Mifflin Joint School Auth., 401 Pa. 387, 164 A.2d 221, 223 (1960); Vogel v. Northern Assurance Company, 219 F.2d 409, 411 (3rd Cir. 1955); 2 Pomeroy's Equity Jurisprudence, § 368 (5th Ed. 1941). Thereafter legal title was held by Center in trust for the plaintiffs and as security for the payment of the balance of the purchase price. Ibid. The fact that $750,000 of the purchase price was characterized as a loan in no way altered the substance of the contract.

The equitable ownership had an ascertainable worth equal to the value of the improved lands and the partially completed buildings. There is no testimony in the record as to the value of the land but there is evidence which furnishes some indication as to the value of the partially completed buildings. Before the plaintiffs contracted to purchase the property the defendant had advanced a total of $2,991,616.52 in construction loans; this investment was later increased to $3,608,354.61. The plaintiffs' investment was only $575,000. It is significant that shortly after the foreclosure sale the stock in East Hills was sold for a price in excess of $5,600,000.

■ The plaintiffs offered no evidence as to the value of their equitable ownership but were apparently content to rest on their claim to the funds advanced on account of the purchase price. We must agree with the District Court that in the absence of such evidence, or its equivalent, the plaintiffs failed to prove damage.

■■ The claim in the amount of $3,000,000 is based upon an evaluation of the benefits by way of profits the plaintiffs would have realized if the contract for the sale of the property had been performed. It is clear that under the law of Pennsylvania a victim of fraud

may recover only his actual loss and not the value of his bargain. Neuman v. Corn Exchange Nat. Bank & Trust Co., and Peters v. Stroudsburg Trust Co., both supra. The "loss of bargain" rule, followed in many states, has not been adopted by the courts of Pennsylvania. Ibid. Cf. McCormick on Damages, § 121.

### ALTERNATIVE CLAIM FOR DAMAGES UNDER RULE OF ESTOPPEL

As an alternative basis for relief the plaintiffs sought to impose liability on the defendant under the rule of promissory estoppel which has been adopted by the Supreme Court of Pennsylvania. Berliner v. Bee Em Manufacturing Company, 383 Pa. 458, 119 A.2d 65; Fried v. Fisher, 328 Pa. 497, 196 A. 39. The rule as adopted is that stated in Restatement of the Law, Contracts, § 90, which reads in pertinent part as follows:

"A promise which the promisor shall reasonably expect to induce action * * * of a definite and substantial character on the part of the promisee and which does induce such action * * * is binding if injustice can be avoided only by enforcement of the promise."

Their claim for damages is predicated on the following facts as to which there is little dispute.

Prior to the commencement of the foreclosure proceedings, and thereafter, representatives of the respective parties participated in negotiations which ultimately led to an informal understanding. The defendant promised to forego its right to proceed with the foreclosure of its first mortgage and to extend its term for the benefit of the plaintiffs but on condition that the plaintiffs would proceed with the foreclosure of their second mortgage, purchase the property subject to defendant's first mortgage, pay arrearages of accrued interest, and complete construction of the shopping center.

Notwithstanding the agreement, the defendant on October 2, notified the plaintiffs of its intention to proceed with the public sale under its foreclosure decree. This notification constituted a revocation of the offer. The sale, then scheduled for October 5, was adjourned to October 9, when the property was sold to the defendant; title was taken in the name of a corporation organized for this specific purpose.

 The plaintiffs argue here, as they did in the court below, that the conduct of the defendant resulted in a loss to them of their investment and anticipated profits for which they are entitled to be compensated. We can eliminate from consideration the claim for damages based on the loss of their investment because it clearly appears from the evidence that the investment was not induced by any promise relating to the foreclosure proceedings. Absent the element of inducement the rule of promissory estoppel is not applicable. Rennie & Laughlin, Inc. v. Chrysler Corporation, 242 F.2d 208, 212 (9th Cir. 1957). We therefore treat the claim as one for the loss of anticipated profits.

 A party who invokes the rule of promissory estoppel as a basis for relief has the burden of proving that he acted to his detriment in reliance on the promise. Fried v. Fisher, supra; Berry v. Maguire, 162 Pa.Super. 67, 56 A.2d 282 (1948); Gallo v. Howard Stores Corporation, 250 F.2d 37 (3rd Cir. 1957); Freedman v. The Concordia Star, 250 F.2d 867 (2nd Cir. 1958); 1A Corbin on Contracts (1963 Ed.) § 200. He must prove that the action taken amounted to a substantial change of position. Ibid. There was no such proof in the instant case.

The promise of the defendant was made on the condition that plaintiffs would take definite action of a substantial character, but this they failed to do. They took no action which in any way altered their position adversely; their position subsequent to the making of the promise remained the same as it had been prior thereto. There is no evidence in the record that the plaintiffs incurred any expense, made any addition-

al investment, or suffered any actual loss as a consequence of their alleged reliance on the defendant's promise.

Their claim for damages was predicated solely on the loss of gratuitous benefits to which they had no legal or equitable right. Such a loss cannot furnish a basis for the application of the rule of estoppel. Stelmack v. Glen Alden Coal Co., 339 Pa. 410, 14 A.2d 127, 129, 130 (1940). Absent some action "of a definite and substantial character" in reliance on the promise, estoppel may not be invoked.

The question as to the sufficiency of evidence aside, there is a further consideration of equal importance. The defendant's promise was in substance a conditional offer made without consideration. Until such time as the plaintiffs entered upon performance or substantially changed their position in reliance on the promise, the offer was revocable. 1 Williston on Contracts (3rd Ed.) § 55; 1 Corbin on Contracts (1963 Ed.), § 49. We are of the opinion that under the facts and circumstances of this case the defendant's revocation of its offer, upon notice to the plaintiffs, was valid and effective.

### CLAIM FOR DAMAGES BASED ON BREACH OF CONTRACT

The claim for damages for breach of contract seems somewhat nebulous. It appears from the complaint and the pretrial statement filed by the plaintiffs that the claim is predicated on the charge that the defendant, in violation of its supplemental agreement of January 21, 1959, improperly disbursed or supervised the disbursement of $303,181.42 advanced by the plaintiffs between February and June. Since this theory of liability is not referred to in the briefs submitted on behalf of the plaintiffs it is reasonable to assume that it has been abandoned. We have nevertheless considered the record in light of the charge and find no evidence to support it.

The judgment of the court below will be affirmed.