Albert D. EIGEN, Executor of the Estate of Martin Eigen and Joan Eigen, Deceased, and Albert D. Eigen, Administrator of the Estate of Mollie H. Eigen, Deceased

v.

TEXTRON LYCOMING RECIPROCATING ENGINE DIVISION, a Division of Avco Corporation, Textron, Inc., Avco Corporation, Flightways of Long Island, Inc. d/b/a Million Air Farmingdale, Aircraft Rentals, Inc., Executive Air Support, Inc. d/b/a Texas Air Support, Inc., Precision Airmotive Corporation, Zenith Fuel Systems, Inc. Precision Aerospace Corporation, Purolator Products Company (Formerly Facet Enterprises, Inc.), Facet Aerospace Products Company, Facet Fuel Systems, Inc., Facet Enterprises, Inc., Marvel Schebler, a Division of Borgwarner Corporation, Eaton Corporation

Appeal of: PRECISION AIRMOTIVE CORPORATION

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.

Filed April 20, 2005.

Reargument Denied June 16, 2005.

Patrick Matusky, Philadelphia, for appellant.

Bradley J. Stoll, Philadelphia, for Eigen, appellee.

Before: LALLY–GREEN, BOWES, and KELLY, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Precision Airmotive Corporation ("Precision"), appeals from the order entered on May 5, 2004. This order granted a Petition to Enforce Settlement filed by plaintiff/appellee Albert D. Eigen ("Eigen"). The order also denied Precision's Petition for Relief. We affirm the order insofar as it grants the Petition to Enforce Settlement, and reverse the order insofar as it denies the Petition for Relief. We also remand for an evidentiary hearing.

¶ 2 The factual and procedural history of the case is somewhat complex. The case arises from an airplane crash on May 28, 1999. The pilot was Martin Eigen ("Martin"). The plane had two passengers: Martin's wife, Joan, and Martin's mother, Mollie. All three occupants died in the crash. Martin was flying a rented Piper aircraft at the time.

¶ 3 Eigen, Martin's brother, is the executor of Martin's and Joan's estates. He is also the administrator of Mollie's estate. Eigen filed suit against a number of parties, including: (1) Textron Lycoming

("Textron"), the manufacturer of the plane; (2) Flightways of Long Island ("Flightways"), the organization that maintained and rented the plane; and (3) Precision, the manufacturer/overhauler/installer of the carburetor on the plane. Precision filed a counterclaim against Martin's estate. Precision argued that it was entitled to contribution or indemnity insofar as Martin's own negligence contributed to Mollie's and Joan's deaths. In response to this counterclaim, Eigen specifically denied that Martin was negligent.

¶ 4 Trial began on January 5, 2004. On January 26, 2004, before the trial was complete, all parties entered into a settlement agreement. Eigen contends that the total settlement figure was $4,333,333.00. Precision contends that the total settlement figure was between $4,000,000.00 and $4,333,333.00. Both parties agreed that Precision settled for $1,333,333.00.[1] Precision did not actually tender this settlement amount to Eigen. Precision claims that it

learned, mere hours after settlement, that Eigen had induced the settlement by fraud.

¶ 5 On February 27, 2004, Eigen filed a Petition to Enforce Settlement. Essentially, Eigen argued that Precision should tender payment because the parties had entered into an enforceable settlement. On March 18, 2004, Precision filed an answer to the petition.

¶ 6 On the same day, Precision filed a Petition for Relief. In this Petition, Precision alleged the following. After the settlement, Precision learned for the first time that Martin had an insurance policy on his own aircraft (the "Beech Duke").[2] This policy may provide $2 million in coverage to Martin's passengers, regardless of which plane Martin was flying. Precision claimed that it had asked for this type of insurance coverage in discovery. Eigen allegedly acted in bad faith by failing to produce the policy, and by falsely stating during discovery that no coverage existed.[3]

1. Precision contends that Textron settled for $1,000,000.00, and that Flightways settled for the remainder. Eigen does not seriously dispute this contention.

2. Again, Martin was not flying the Beech Duke at the time of the accident. Rather, he was flying a rented Piper aircraft.

3. Precision attached to its Petition for Relief a rather remarkable letter written by Eigen's counsel, Arthur Alan Wolk of the Wolk Law Firm. The letter is dated January 26, 2004, the very day of the settlement with Precision. The letter is written to W. Timothy McSwain, Esq., of United States Aviation Underwriters (USAU), the insurer of Martin's Beech Duke aircraft. The letter reads in relevant part as follows:

> Dear Tim:
> Further to our written agreement embodied in my letter to you dated May 25, 2001, a copy of which is attached, we have withheld filing suit against the estate of Martin Eigen until a resolution could be achieved to an underlying case against various other entities.

That matter is now resolved, and we wish to make claim under the terms of Mr. Eigen's policy for the entire $2 Million coverage.
In support of that claim, I am enclosing a copy of the expert reports provided by the defendants Textron Lycoming, Precision, and Flightways of Long Island. In addition, I am providing you with the economic analysis that was performed by Dr. Harvey Rosen as well as an Eigen family video.
. . .
Based on experts that were indeed hired by United States Aviation Underwriters and others, it would appear that Martin Eigen may have been responsible in part for this accident.
. . .
Not one of the defense experts concluded that anything was wrong with anything on this airplane, so it must have been pilot error. The fact that Mr. Eigen crashed his Cessna 414 at Bennington, in the ice, ten years earlier, and flunked a couple of check rides thirty years before, must be positive proof of his incompetence.

¶ 7 Precision also argued that it recently learned that Eigen was preparing to pursue a claim against the Beech Duke policy. Specifically, Eigen was preparing to claim that Martin's negligence resulted in the death of Joan and Mollie. As noted above, Eigen had previously denied that Martin was negligent in any way. Precision argued that if it had known about the Beech Duke coverage, "the settlement amounts Precision would have been willing to contribute for the claims of the Joan and Mollie Eigen estates would have been substantially less. Furthermore, Precision would not have agreed to a joint tortfeasor release and would have insisted on a substantial contribution by the insurer for Martin Eigen's estates to the overall settlement." Petition for Relief, pp. 11–12, ¶ 29.

¶ 8 Precision has consistently maintained that it does not want to rescind the underlying settlement. Rather, Precision wants to affirm the settlement and sue for damages arising from Eigen's alleged fraud. *See, e.g.,* N.T., 4/27/2004, at 30; Petition for Relief at 19, ¶¶ 50–51; Precision's Brief at 38.

¶ 9 The trial court held oral argument on April 27, 2004. The court did not hold an evidentiary hearing. On April 29, 2004, the court issued an order granting Eigen's Petition to Enforce Settlement, and denying Precision's Petition for Relief. This order was docketed on May 5, 2004. This appeal followed.[4]

> Since the claims for the loss of Joan Eigen and Mollie Eigen exceed the value of the policy, I would ask that you offer up the limits of the policy at once.
> I look forward to hearing from you. We are preparing a lawsuit for filing in Philadelphia. Please let me know, at your earliest convenience, if we can discuss an early settlement of this case.
> Very truly yours,

¶ 10 Precision raises seven issues in its Statement of Questions Involved:

1. Is a party entitled to relief when another party misrepresents and conceals material facts in pretrial proceedings, discovery and settlement negotiations?

2. Is the concealment of insurance material as a matter of law?

3. Can the trial court resolve genuine issues of material fact relating to a settlement agreement without allowing discovery and holding an evidentiary hearing?

4. Does the record evidence support the trial court's finding that there is no insurance coverage under the USAU policy for Martin Eigen's liability when flying a substitute aircraft or another aircraft he did not own?

5. Does the record evidence support the trial court's finding that the estates' concealments and misrepresentations were not material, and does it support the factual assumptions the trial court made in support of this finding?

6. Does the record evidence support the trial court's finding that Precision sought to rescind the release?

7. Did the trial court err in failing to consider factual and legal matters pertinent to Precision's claim for relief and by failing to enter fact findings that the estates concealed the insurance coverage, the claims by the passengers' es-

/s/ Arthur Alan Wolk

4. On July 12, 2004, the trial court ordered Precision to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925. Precision filed its Concise Statement on July 23, 2004. Precision preserved the issues that it now raises on appeal. The trial court filed a Rule 1925 opinion on August 3, 2004.

tates against the pilot's estate, and the tolling agreement?

*Precision's Brief* at 3.

¶ 11 We will distill Precision's seven claims into two central issues. First, we will determine whether Pennsylvania law provides any relief for fraud in the inducement of a settlement agreement, aside from the remedy of rescission.[5] Next, we will determine whether Precision presented a sufficient showing of fraud in the inducement to justify holding an evidentiary hearing. Both issues present pure issues of law, for which we employ a *de novo* standard of review. *See, Toy v. Metro. Life Ins. Co.,* 863 A.2d 1, 6 (Pa.Super.2004). After we have disposed of these central issues, we will briefly address miscellaneous issues raised by Eigen and the trial court.

## A. Remedies for Fraud in the Inducement

 ¶ 12 Our Supreme Court and this Court have consistently held that the victim of fraud in the inducement has two options: (1) rescind the contract, or (2) affirm the contract and sue for damages. *Scaife Co. v. Rockwell–Standard Corp.,* 446 Pa. 280, 285 A.2d 451, 456 (1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972); *Skurnowicz v. Lucci,* 798 A.2d 788, 795 (Pa.Super.2002); *Briggs v. Erie Ins. Group,* 406 Pa.Super. 560, 594 A.2d 761, 763 (1991);[6] *see also, Neuman v. Corn Exchange Nat'l Bank & Trust Co.,* 356 Pa. 442, 51 A.2d 759 (1947) (discussing the proper measure of damages for fraud in the inducement of a contract).

¶ 13 The trial court erroneously relied on federal authority to the contrary. The trial court wrote: "it is well-settled that a settlement will not be overturned on the basis that the opposing party failed to produce an important document that would have been relevant to the success of the plaintiff's case." Trial Court Opinion, 8/3/2004, at 4, *citing, Dempsey v. Associated Aviation Underwriters,* 141 F.R.D. 248 (E.D.Pa.1992), *affirmed without opinion,* 977 F.2d 567 (3rd Cir.1992).

¶ 14 Initially, we note that *Dempsey* does not stand for that proposition. Rather, *Dempsey* stands for two different propositions. First, *Dempsey* holds that the victim of the fraud may rescind the settlement, but to do so he must return the consideration he received. *Dempsey,* 141 F.R.D. at 249–250. This point of law, while accurate, is irrelevant. Again, Precision does not seek to rescind the settlement.

¶ 15 Next, *Dempsey* held that the victim does not have the option of affirming the contract and seeking consequential damages. *Id.* We disagree. First, we note that decisions from federal courts, other than the United States Supreme Court, are not binding on this Court. *Trach v. Fellin,* 817 A.2d 1102, 1115 (Pa.Super.2003) (*en banc*), *appeal denied,* 577 Pa. 725, 847 A.2d 1288 (2004).

¶ 16 Moreover, this proposition in *Dempsey* does not accurately reflect Pennsylvania law. *Dempsey* relied on *Nocito v. Lanuitti,* 402 Pa. 288, 167 A.2d 262 (1961). *Nocito* does suggest that the victim of fraud in the inducement may only rescind, or "affirm the voidable contract and waive

---

**5.** According to the trial court, Precision claims that the settlement "should be voided." Trial Court Opinion, 8/3/2004, at 3. The record does not support this position. As noted above, Precision does not want to rescind the settlement.

**6.** *Briggs* was overruled in part on other grounds by *Dempsey v. Cessna Aircraft Co.,* 439 Pa.Super. 172, 653 A.2d 679 (1995) (*en banc*), *appeal denied,* 541 Pa. 631, 663 A.2d 684 (1995).

the fraud." *Nocito*, 167 A.2d at 263.[7] Assuming *arguendo* that *Nocito* stands for that proposition, we would not follow it in light of our Supreme Court's holding to the contrary ten years later in *Scaife*. In *Scaife*, our Supreme Court held that "the affirmance of a contract induced by fraud of the seller does not extinguish the right of the purchaser, and it is not a waiver of the fraud, nor does it bar the right of the purchaser to recover damages for the fraud. Affirmance of the contract is not a waiver of the fraud; nor does it bar the right to recover; it does bar a subsequent rescission." *Scaife*, 285 A.2d at 456 (citations omitted). In our view, *Scaife* represents the current position of the Pennsylvania Supreme Court on this matter.[8] For these reasons, we conclude that Precision may choose to sue for damages without rescinding the settlement.[9] *Scaife; Briggs; Neuman; Skurnowicz.*

## B. Fraud in the Inducement

■ ¶ 17 We now turn to the question of whether Precision is entitled to an evidentiary hearing on its claim of fraud in the inducement. Where the complaining party presents sufficient allegations of fraud to justify relief, the trial court errs by failing to hold an evidentiary hearing to develop the claim. *McDonnell v. Ford Motor Co.*, 434 Pa.Super. 439, 643 A.2d 1102, 1106–1107 (1994), *appeal denied*, 539 Pa. 679, 652 A.2d 1324 (1994).

■ ¶ 18 The elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Skurnowicz*, 798 A.2d at 793, quoting, *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 560 (1999). We will examine each element in turn.

### 1. Representation

■ ¶ 19 The record reflects that during discovery, Precision asked Eigen to produce "all insurance policies applicable to the accident aircraft or its occupants at the time of the accident." Precision's Request for Production, # 26. Precision asked for documents that Eigen possessed, and also for documents available to Eigen through his attorneys, agents, investigators, and insurers. Eigen did not produce the Beech Duke policy in response to this request. Eigen also represented that it had produced all documents that were responsive to Precision's request. Thus, Precision has presented sufficient evidence that Eigen made a representation about available insurance coverage.

### 2. Materiality

¶ 20 Precision argues that the Beech Duke policy, allegedly containing $2 mil-

---

7. *See also, Hess v. Evans*, 288 Pa.Super. 180, 431 A.2d 347, 350 (1981) (*citing Nocito*, and holding that a party could not seek to void a settlement and simultaneously retain the consideration he received).

8. We also note that our Supreme Court has not cited to *Nocito* even once in the 44 years since it was issued in 1961.

9. Precision does not want to rescind the settlement; thus, it must be enforced. For this reason, we affirm that portion of the trial court's order which granted Eigen's petition to enforce the underlying settlement. *See, Wedgewood Diner, Inc. v. Good*, 368 Pa.Super. 480, 534 A.2d 537, 538 (1987) (party may not seek both rescission and damages; rather, a party must select one of those remedies). As noted *infra*, we will direct that the settlement funds be placed in escrow pending the disposition of the fraud claim.

lion in coverage for Mollie and Joan, was material. Precision explains:

> [H]ad the estates disclosed the $2 million policy, Precision would have insisted on a substantial contribution from USAU [the Beech Duke insurer] to settle the claims of the passenger estates or Precision's own counterclaims for contribution/indemnity against Martin Eigen's estate. Had Precision known of this policy, Precision would not have agreed to contribute as much as it did in settlement or to dismissal of its counterclaims against the pilot. Second, disclosure would have materially altered the nature of the case and significantly decreased the value of the estates' claims against the corporate defendants.

Precision's Brief at 57.[10]

¶ 21 A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation. *Silverman v. Bell Sav. & Loan Asso.*, 367 Pa.Super. 464, 533 A.2d 110, 113 (1987), *appeal denied*, 518 Pa. 642, 542 A.2d 1371 (Pa.1988). "One deceived need not prove that fraudulent misrepresentation was the sole inducement to the investment of money, a material inducement is sufficient." *Id.* (citations omitted).

¶ 22 Our Supreme Court has held that as a practical matter, full and complete information regarding insurance coverage is essential to the settlement process. *Szarmack v. Welch,* 456 Pa. 293, 318 A.2d 707, 709–710 (1974); *see also,* Pa.R.C.P. 4003.2 (insurance information is discoverable, even if it may not ultimately be admissible at trial). Similarly, this Court has

accepted the proposition that a misrepresentation about the applicable limits of an insurance policy was material to settlement. *Briggs,* 594 A.2d at 765.

¶ 23 The trial court declined to hold an evidentiary hearing, largely based on the proposition that the Beech Duke policy was immaterial to the settlement process. Trial Court Opinion, 8/3/2004, at 4, 6. For example, the trial court contends that Precision settled in order to avoid a huge punitive damages award.[11] The court also reasoned that the damages for Mollie and Joan (the passengers who would have been affected by the Beech Duke policy) were negligible. *Id.* Similarly, Eigen contends that Precision's arguments about materiality are specious, confusing, and implausible. Eigen's Brief at 32.

¶ 24 We disagree. We see nothing particularly confusing or implausible about Precision's argument on materiality. Eigen himself apparently believes that Mollie's and Joan's estates are entitled to $2 million in coverage under the Beech Duke policy for Martin's negligence. *See,* footnote 3, *supra.* Precision presents a plausible argument that this information would have been material to the terms of any final settlement.[12] Precision is entitled to an evidentiary hearing, rather than mere argument, about how this information would have affected the terms of settlement. Finally, we note that the trial court's conclusions about Precision's motivation to settle are based on speculation and legal argument. The court should hold a hearing on this factual matter. *McDonnell.*

---

10. Precision made similar arguments before the trial court. N.T., 4/27/2004, at 18–19.

11. Eigen suggests that Precision would have been found liable for punitive damages because Precision knew of a defect in the carburetor's design, but did not alter the design despite many crashes. Moreover, evidence arose that Precision's co-defendant, Flightways, may have altered certain flight records.

12. We need not address Precision's argument that insurance is always material as a matter of law.

### 3. Falsity

¶ 25 Precision argues that Eigen provided false discovery responses. During discovery, Precision asked for "all insurance policies applicable to the accident aircraft or its occupants at the time of the accident." Request for Production # 26 (emphasis added). Eigen stated that he produced all documents which were responsive to this request. Yet Eigen did not produce the Beech Duke policy; indeed, he still has not done so. If the Beech Duke policy covers Martin's passengers, regardless of which plane Martin was flying at the time, then the Beech Duke policy would be "applicable" to the accident aircraft's occupants. In that case, Eigen's discovery response would be false.

¶ 26 Eigen himself apparently believes that the policy exists, and that it covers Mollie and Joan. Most notably, Eigen's counsel wrote a letter to USAU on the day of settlement, demanding that USAU tender the entire $2 million policy limits on the Beech Duke policy as soon as possible. *See,* footnote 3, *supra.* In short, Precision has presented strong *prima facie* evidence that Eigen gave false discovery responses. The court should hold an evidentiary hearing to determine whether the Beech Duke policy exists, and whether it applies to Martin's passengers.

¶ 27 Eigen produced a series of documents relating to the Beech Duke policy, but not the Beech Duke policy itself. We strongly disapprove of these tactics. It should not be difficult for Eigen to arrange for production of the entire policy, so that the parties and the trial court can have an intelligent discussion about whether the policy applies. Advocates in our legal system owe a duty of candor to the tribunal, and a duty of fairness to opposing parties and opposing counsel. *See,* Rules of Prof. Conduct 3.3, 3.4. In short, this Court wishes to express its deep concern that Eigen and/or his counsel may be playing "fast and loose" with our legal system. On remand, we respectfully urge the trial court to be sensitive to this possibility.

### 4. Intent

■ ¶ 28 To succeed on a claim of fraudulent inducement, the complaining party must show intent to mislead. *Skurnowicz.* Again, Precision has presented strong *prima facie* evidence that Eigen deliberately withheld the existence of the Beech Duke policy. For example, Precision's counsel filed an affidavit stating the following:

> The jury was dismissed on January 26 after the settlement was announced to the Court. Later that day, I had a brief conversation with Mr. Wolk [Eigen's counsel]. He boasted that he could now tell me that, in addition to this settlement, he was pursuing a claim against the pilot's insurer. He said he planned to use our expert reports to establish the pilot's negligence. During that conversation, Mr. Wolk told me that he had negotiated an agreement between the Joan and Mollie Eigen estates and the pilot's insurer USAU to toll the statute of limitations for claims by Joan and Mollie Eigen's estates against the pilot. This agreement was not disclosed in discovery despite a specific request for such agreements. I was stunned by this information since: (a) Mr. Wolk and his client had represented that there was no such insurance, and (b) it was unfathomable to me that such a stark conflict of interest could exist.

Petition for Relief, Affidavit of Precision's counsel, Richard C. Coyle, at 12, ¶ 34. Attorney Coyle's summary of events mirrors Attorney Wolk's letter to USAU on the day of settlement. *See,* footnote 3, *supra.* These facts, if true, would show that Eigen intentionally withheld information regard-

ing the Beech Duke policy until a time when it was advantageous for him to do so.

¶ 29 Eigen argues that he did not disclose the existence of the Beech Duke policy because the discovery request was vague. We see nothing at all vague about Precision's discovery request.

¶ 30 Eigen, through his counsel, Arthur Alan Wolk, further argues that he had no intent to deceive. Of course, this Court is not the fact-finder, and therefore we cannot determine Eigen's intent. Nevertheless, we are compelled to note that Attor-

ney Wolk's tactics in the instant case bear a striking resemblance to the tactics that a federal judge exhaustively details and condemns in a recent opinion. In *Taylor v. Teledyne Technologies, Inc.*, 338 F.Supp.2d 1323 (N.D.Ga. Sept.7, 2004), the Honorable Julie E. Carnes outlines a problematic series of maneuvers on the part of Attorney Wolk in that litigation.[13]

¶ 31 We cannot stress strongly enough that an attorney's reputation is judged not only by his effectiveness in representing a client, but also by his candor, trustworthi-

---

**13.** By way of one example, in *Taylor*, Judge Carnes explains that she initially entered an Omnibus Discovery Order which was highly critical of Attorney Wolk's conduct. *Id.* at 1326. Attorney Wolk then argued that the order should be vacated. *Id.* at 1331. Judge Carnes ultimately entered a new order, drafted by Attorney Wolk, which stated in pertinent part that the Omnibus Discovery Order "shall be... sealed, and shall not be disclosed without further order of this Court.... The parties, their representatives, successors, insurers, and all others are directed not to publicize the [Discovery Order], to destroy all copies, and to obtain the return or destruction of all copies of said Order." *Id.*

According to Judge Carnes:

Finality did not occur, however. Instead, even though he had sought the sealing of the vacated Omnibus Discovery Order because it had contained criticisms of his professional conduct, Wolk filed a defamation action based on this order against [various parties] in a state court in Pennsylvania, less than four months after this Court issued the Protective Order vacating and sealing the Omnibus Discovery Order. In that action, Wolk essentially repeated these same criticisms made by the Court in a purported paraphrase of the Order.

*Id.* at 1332.

The defamation claim sparked a petition to hold Attorney Wolk in contempt. The court held a hearing on the contempt petition. First, Attorney Wolk took the position that he did not publicize and disclose the sealed discovery order. Judge Carnes rejected this position:

Also problematic for the Court has been [Wolk's] contention that the summarizing

and paraphrasing of the Order in publicly-filed litigation did not constitute a disclosure of the Order, as [Wolk] disclosed to the world the substance of the Omnibus Discovery Order. Moreover, [Wolk's] position is particularly difficult to accept because he has taken the position that, had Movant summarized the vacated order in litigation, as [Wolk] did, [Wolk] would consider Movant to be in violation of the Protective Order and would sue Movant. Yet if a particular act, when taken by Movant, would constitute a "disclosure" or "publicizing" in violation of the Protective Order, the Court knows of no rule of construction that would call for a different interpretation of these words when it it [Wolk] who is committing the act. Words do not change their meaning depending on who the speaker or actor is.

*Id.* at 1341.

Amazingly, "[Wolk] acknowledged at the hearing that he had actually drafted the Pennsylvania Complaint prior to drafting the Protective Order to insure that he could mesh the provisions of the two documents in a way that would arguably allow him to base a lawsuit on the very vacated Order that he had urged never be disclosed or publicized again." *Id.* at 1342. Judge Carnes ultimately found that Wolk intentionally violated the protective order. *Id.* at 1345.

We note that the events detailed in throughout the *Turner* opinion both predated and postdated the events of the instant case. Our own review of the record in Appellant's case suggests echoes of the sophisticated tactics employed in *Taylor* being employed in the instant litigation.

ness and respect to opponents and to the tribunal. Indeed, if an attorney fails in his duty of candor, trustworthiness and respect, the resultant harm to his reputation will certainly make him less effective in representing his clients. Particularly given the unnerving events detailed in the *Taylor* case, we expect Wolk to act with nothing but scrupulous honesty, trustworthiness and integrity in any further stage of the instant litigation.

### 5. Justifiable reliance

¶ 32 In order to succeed on a claim of fraudulent inducement, the complaining party must demonstrate justifiable reliance. *Skurnowicz.* "To be justifiable, reliance upon the representation of another must be reasonable." *Porreco v. Porreco,* 571 Pa. 61, 811 A.2d 566, 571 (2002) (Opinion Announcing the Judgment of the Court). "Whether the party claiming to have been defrauded relied upon the false representation is a question of fact." *Silverman,* 533 A.2d at 114.

¶ 33 Precision argues that it was entitled to rely on Eigen's discovery responses. Eigen counters that Precision could have gleaned information regarding the Beech Duke policy with a simple phone call to any number of third parties, including USAU. Eigen also argues that Precision knew or should have known that Martin owned his own Beech Duke aircraft, and that all pilots must carry insurance on their own aircraft.

¶ 34 Our discovery rules are designed to encourage a fair trial on the merits, and to discourage unfair surprise. *Duncan v. Mercy Catholic Med. Ctr. of Southeastern Pa.,* 813 A.2d 6, 10 (Pa.Super.2002), *appeal denied,* 573 Pa. 716, 828 A.2d 350 (2003). The party producing discovery responses must verify that his answers are truthful and complete. Pa. R.C.P. 4009.12(c). These rules also require parties to disclose information that they would not ordinarily disclose. Our Rules of Civil Procedure also provide sanctions for false or incomplete discovery responses. Pa.R.C.P. 4019. These rules are supplemented by our Rules of Professional Conduct. *See,* Rule of Prof. Conduct 3.3 (candor toward tribunal); 3.4 (fairness to opposing party and counsel). These rules would be largely meaningless if a party could falsely withhold discoverable information on the ground that the requesting party could obtain it elsewhere.[14] To hold otherwise would inject all manner of

---

14. Of course, "[i]t is not a purpose of discovery for a party to supply, at its own expense, information already under the control or readily available to the opposing party. A plaintiff will not be compelled to answer a defendant's interrogatories when the matters contained in the interrogatories are at least equally within the defendant's knowledge." *Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025, 1031 (1993), *appeal denied,* 538 Pa. 663, 649 A.2d 666 (1994).

Interestingly, the trial court agreed with Eigen, reasoning that Precision could have received the Beech Duke policy from USAU, despite the fact that Eigen had apparently ignored a discovery request in a case over which the court presided. The court wrote:

Significantly, as [Eigen] pointed out, Mr. Eigen and Precision were both insured by [USAU], and the USAU agent, Timothy McSwain, was present in the courtroom throughout the trial on behalf of Precision. He could have been questioned about the coverage provided in Martin Eigen's insurance policy on his Beech Duke aircraft.

Trial Court Opinion, 8/3/2004, at 4 (emphasis added).

The record does not support the trial court's position that USAU represents Precision. Indeed, both Eigen and Precision agree that USAU does not insure Precision. In any event, Precision contends that it has attempted to obtain the policy from USAU, to no avail. Petition for Relief, Affidavit of Richard Coyle, ¶ 43.

gamesmanship and second-guessing into the discovery process.

¶ 35 In ordinary contractual relationships, our Supreme Court has "hesitate[d] to find reliance justified where the party claiming reliance had an adequate opportunity to verify the allegedly fraudulent statements." *Porreco*, 811 A.2d at 571. As noted above, however, discovery takes place under a framework of court-enforced rules that do not apply to ordinary arm's length transactions. Thus, we conclude that the reasonableness of Precision's reliance should be viewed in light of the special rules governing discovery.[15]

¶ 36 We also note the following. Even assuming that Precision knew or should have known that Martin carried insurance, it does not follow that Precision knew or should have known the actual contents of the Beech Duke policy. Aircraft policies may carry varying types and amounts of coverage to passengers, including passengers in non-owned aircraft.

¶ 37 The trial court offers another position on the reliance question. Specifically, the court wrote that "the undisclosed document [the Beech Duke policy] was of no moment, as proved by [Eigen's] Sur–Reply documents [presented at oral argument]." Trial Court Opinion, 8/3/2004, at 5. These "Sur–Reply Documents" are a collection of documents related to the Beech Duke policy. *Id.* at 3. The trial court apparently relied on these documents to conclude that the Beech Duke policy only covers passengers in the Beech Duke itself, not passengers in any other aircraft. *Id.*

¶ 38 This conclusion is premature. Eigen has never disclosed the entire policy and all relevant accompanying documents. Without a full and complete review of the

policy as a whole, the court cannot fairly conclude that the Beech Duke policy provides no coverage. Indeed, Eigen himself apparently believes that the policy does provide $2 million in coverage. *See*, footnote 3, *supra*. The trial court should hold an evidentiary hearing on the issue of justifiable reliance.

### 6. Proximate cause and damages

■■■ ¶ 39 A party claiming fraud in the inducement must demonstrate that the fraud proximately caused economic harm. *Skurnowicz*. For the reasons set forth above regarding materiality and justifiable reliance, we conclude that Precision is entitled to an evidentiary hearing regarding proximate cause.

■■■ ¶ 40 Finally, we turn to damages. The proper measure of damages is the actual settlement amount ($1.333 million), minus the amount that the parties would have settled for if Eigen had disclosed the policy, plus any other consequential damages. *See, Neuman*, 51 A.2d at 765–766; *Skurnowicz*, 798 A.2d at 795; *Silverman*, 533 A.2d at 116. This measure of damages cannot be established without an evidentiary hearing.

### C. Miscellaneous Issues

¶ 41 Before concluding, we will address miscellaneous issues raised by Eigen and the trial court.

### 1. "Separate action" requirement

¶ 42 Eigen argues that Precision must pursue its fraud claim in a separate action. Eigen's Brief at 22, *citing, inter alia, Tilghman v. Dollenberg*, 418 Pa. 604, 213 A.2d 324, 327 (1965).

---

**15.** We do not hold that a party is always entitled, as a matter of law, to rely on an opposing party's discovery responses. Rath-

er, we hold that when the trial court reviews the reasonableness of Precision's reliance, the discovery context is one significant factor.

¶ 43 After reviewing the authorities cited by Eigen, we see no "separate action" requirement. We recognize that fraud-in-the-inducement claims often do arise out of a separate action. On the other hand, our case law does not require a separate action in cases such as this. Nor do we see any particular justification for such an arbitrary exercise. Here, the trial court still retained jurisdiction over the case when Precision discovered the alleged fraud and filed its Petition for Relief. Thus, the trial court still had jurisdiction to grant relief to Precision. *See, e.g.,* Pa.R.C.P. 4019 (discovery sanctions); 42 Pa.C.S.A. § 2503 (counsel fees for dilatory, obdurate, or vexatious conduct); Pa.R.C.P. 1031 (permissive counterclaims). We see no need to discontinue the instant case and start a new case.

## 2. Evidentiary Hearings Required Only for Rescission

¶ 44 Eigen argues that "evidentiary hearings are only available to a party claiming rescission." Eigen's Brief at 35 (citing cases). We can easily dismiss this claim. As noted above, one option for a party claiming fraud in the inducement is to affirm the contract and sue for damages. Courts may hold full-scale trials to decide such cases. *Skurnowicz; Briggs.* It logically follows that the court may hold an evidentiary hearing when the moving party presents sufficient *prima facie* evidence of fraud. *McDonnell.* This claim lacks merit.

## 3. Eigen's Motion for Sanctions

¶ 45 Finally, Eigen argues that Precision should be sanctioned under Philadelphia Civil Rule 229.1, 42 Pa.C.S.A. 2503, and/or 42 Pa.C.S.A. § 8355 for leveling personal and vindictive attacks on Eigen's counsel. Assuming *arguendo* that we have the power to do so, we decline. The question of sanctions is best reserved to the trial court, after an evidentiary hearing. This hearing will also allow the trial court to determine whether any violations of our Rules of Professional Conduct took place. In short, our review of Precision's appeal as a whole does not reveal vindictiveness or bad faith. To the contrary, the appeal has arguable merit.

## D. Conclusion

¶ 46 We do not declare at this juncture that Eigen or his counsel committed fraud in the inducement. Rather, we merely hold that Precision has presented such strong *prima facie* evidence of fraud that the court should have held an evidentiary hearing. We conclude that the trial court erred as a matter of law by rejecting Precision's Petition for Relief without a hearing. The trial court did not err, however, in granting Eigen's Petition for Relief.

¶ 47 On remand, the trial court shall enforce the settlement between the parties, including payment of funds and execution of releases. In order to avoid dissipation of the settlement amount, we direct the trial court to place the settlement amount in escrow pending the resolution of Precision's fraud claim. We also direct the trial court to hold an evidentiary hearing on Precision's fraud claim. Again, we express no opinion on the ultimate outcome of that proceeding.

¶ 48 Order affirmed in part and reversed in part. Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.